618 A.2d 945

Phyllis R. STIDHAM, Administratrix of the Estate of Brett Chadwick Stidham, Deceased, Appellant,

v.

The MILLVALE SPORTSMEN'S CLUB and the Plane View Inn

v.

Robert E. McLAUGHLIN.

Superior Court of Pennsylvania.

Argued Aug. 26, 1992.

Filed Nov. 13, 1992.

Reargument Denied Jan. 25, 1993.

Robert L. Byer, Pittsburgh, for appellant.

Alan T. Silko, Pittsburgh, for participating party.

Before MONTEMURO, KELLY and BROSKY, JJ.

KELLY, Judge:

In this appeal we must again consider the comprehensive homeowner's insurance policy provision excluding coverage for bodily injury or property damage which is expected or intended by the insured. Specifically, we must decide the extent to which a guilty plea by an insured to third degree murder in a prior criminal proceeding forecloses the victim of the harmful conduct from litigating, in an underlying civil action, the issue of the insured's intent. We find that the trial court erred in summarily applying the doctrine of collateral estoppel, thereby dispatching the victim's garnishment action against the insurer. Furthermore, the pleadings and affidavits demonstrate a genuine triable factual issue such that the insurer was not entitled to judgment as a matter of law. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

The trial court opinion set forth the undisputed facts as follows:

In 1988, Robert E. McLaughlin was insured under a home owner's policy issued by Aetna [Casualty and Surety Compa-

ny] which contained a bodily injury liability limit of $50,000. The policy contained the standard exclusion for injuries which are "expected or intended" by the insured.

This lawsuit arises out of an incident which occurred on June 19, 1988, in which McLaughlin shot and killed Brett Stidham. In December 1988, the Administratrix of the Estate of Brett Stidham filed wrongful death and survival actions against a club (Millvale Sportsmen's Club) and a bar (Plane View Inn) at which McLaughlin had consumed alcohol prior to the shooting. In September 1989, Millvale and Plane View joined McLaughlin as an additional defendant. The complaint joining McLaughlin alleged negligent, careless, reckless, and/or willful conduct. At the time he was joined, McLaughlin had pleaded guilty to third degree murder, three counts of aggravated assault, recklessly endangering another person, and criminal mischief and was incarcerated in the state correctional facility.[1]

McLaughlin requested Aetna to provide coverage and a defense under the policy. Aetna denied coverage and declined to defend McLaughlin [in a letter to McLaughlin, dated June 1, 1990].

Plaintiff's claims against the original defendants and the additional defendant were tried before the Honorable David S. Cercone between January 7, 1991, and January 11, 1991. During the trial, which included the testimony and cross-examination of McLaughlin and his wife, plaintiff settled the claims against Millvale and Plane View. The remainder of the case continued as a non-jury trial. At the conclusion of the trial, Judge Cercone rendered a verdict in plaintiff's favor and against McLaughlin in the amount of $1,250,000. Delay damages were added to the verdict resulting in a total molded verdict of $1,474,503.43. A judgment was entered against McLaughlin in that amount.

Plaintiff then instituted this garnishment proceeding to recover the entire judgment with interest, based upon Aetna's

1. In *Commonwealth v. McLaughlin*, 393 Pa.Super. 277, 574 A.2d 610 (1990), the Pennsylvania Superior Court affirmed the judgment of sentence.

alleged breach of its fiduciary duty to its insured and bad faith conduct with respect to its investigation of the claim against its insured, its denial of coverage to the insured, its failure to settle the claim against the insured within the policy limits and its exposing its insured to a foreseeable and substantial excess verdict.

McLaughlin has assigned plaintiff any causes of action which he may have against Aetna arising out of its denial of coverage and its failure to settle plaintiff's claim against Aetna within the policy limits. However, McLaughlin has retained his right to assert claims for attorney's fees and costs incurred in defending the underlying proceedings.

If permitted to do so, plaintiff would be able to introduce evidence that could establish the following facts at trial:

At the time of the shooting, McLaughlin was a fifty-three year old man who had been married to Eileen McLaughlin for more than thirty years. They had twelve children, most of whom were college graduates. He was an army veteran and a former union boilermaker. He had never been arrested and had no history of violent behavior. He was an active member of St. Bonaventure Church. He was an avid sportsman, who enjoyed hunting and fishing. For a short period of time, he owned a bait and tackle shop. He seldom drank alcohol.

On a few occasions in his life, he drank alcoholic beverages to excess. On these occasions, he suffered from an alcohol amnestic syndrome or, in layman's terms, an alcoholic black-out. During those periods of time, he had no conscious awareness of his actions and no memory of events.

The date of the shooting was Father's Day. McLaughlin planned to shoot skeet at the Millvale Sportsmen's Club and then to attend a family dinner at his home. He had been a member of the Millvale Sportsmen's Club for approximately fifteen years. The shooting range was crowded and several members invited him to drink alcoholic beverages with them in the bar area. He consumed a substantial amount of alcohol and began to lose awareness of his actions. After leaving the Millvale Sportsmen's Club, he has limited recollection of

events. He recalls driving on Route 8, stopping at a store, and later entering the Plane View Inn.

At the Plane View Inn, he consumed two shots of Jim Beam and two draft beers. McLaughlin did not know any of the persons in the bar and he did not speak to anyone in the bar. He did not feel or appear to be angry, agitated, or hostile.

Brett Stidham (age twenty-two) and a friend were at the Plane View Inn at the time. Stidham was employed as a technician for TEI Analytical Services, Inc. His friend and he had driven to Butler to retrieve his work clothes. On the return trip from Butler, Stidham and his friend stopped at the Plane View Inn because Stidham was interested in motorcycles and had observed a motorcycle with a side car in the parking lot. Stidham, his friend, and the owner of the motorcycle were seated across the bar from McLaughlin. These three persons did not have any conversation with McLaughlin.

McLaughlin left the bar and went to his truck. He reentered the bar with his shot gun. He does not remember using the gun. He remembers leaving the bar when he heard shattering glass. He proceeded to drive home.

When he arrived at home, he was slumped over the wheel of his car. His wife and his son carried him to his room where he became ill. He slept the rest of the night. The following morning, he was reading an article in *The Pittsburgh Post Gazette* which discussed a shooting that had occurred in the Plane View Inn. Although he had no awareness of participating in such a shooting, he felt that he was in the bar and that he might have had some connection with it.

Although he was not a suspect at the time, he called his priest, went to his church and made a confession. He then went to the State Police, where he proceeded to give a statement. McLaughlin was subsequently charged with the crimes of third degree murder and aggravated assault. During the criminal proceedings, McLaughlin was represented by H. David Rothman, Esquire. McLaughlin was examined by a psychologist, psychiatrist, and neurologist who prepared reports concerning the incident.

On November 18, 1988, McLaughlin entered a guilty plea to the crimes of third degree murder and aggravated assault. At the colloquy that took place at the guilty plea, McLaughlin stated under oath:

Q. And are you content to enter a plea of guilty to murder of the third degree as I have described it to you?

A. Yes, I am.

Q. Do you realize that does not require proof of a specific intent to kill? Do you understand that?

A. Yes.

Q. Did you have a specific intent to kill or hurt anybody that day?

A. No, I didn't.

Q. All right. As to the three counts of aggravated assault, wherein persons were either seriously or otherwise injured, again, that does not require proof of a specific intent to harm; do you understand that?

A. Yes, I do.

Q. In connection with the homicide charge, even if you did not comprehend what you were doing at the time, the law of Pennsylvania does not equate that to legal insanity. Do you understand that?

A. Yes, I do.

After the guilty plea, McLaughlin was sentenced to a prison term of twenty to forty years.

At the trial of this present cause of action, plaintiff will also be able to introduce evidence that would establish the following facts with respect to Aetna's response to McLaughlin's request to provide coverage and a defense:

The criminal lawyers who were handling the appeal of McLaughlin's sentence asked Aetna to defend McLaughlin in the underlying action and to cover the claim. The lawyers supplied Aetna with case law which in their opinion established that Aetna had a duty to enter an appearance based on the allegations in the complaint. Aetna did not conduct any investigation into the incident, did not consult legal counsel, and did not obtain a copy of the complaint to join its insured.

It nevertheless denied coverage [on June 1, 1990,] six months after the claim had been submitted.

Prior to the trial of the underlying action, plaintiff's counsel also contacted Aetna. On June 19, 1990, plaintiff's counsel mailed a letter and memorandum of law to the Aetna claim manager, James R. Hayes, stating that Aetna's denial of coverage was in bad faith. The letter further informed Aetna that the damages in the Stidham case were far in excess of the policy limits. Thus, Aetna's insured might be subject to a large excess verdict. The letter also said that plaintiff would look to Aetna to pay any excess as a result of the improper denial of coverage.

On September 12, 1990, plaintiff's counsel mailed a second letter to Mr. Hayes notifying him of the date of the trial. The letter included expert reports indicating that the actions of Aetna's insured were not intentional. The letter stated that Aetna was improperly claiming that coverage was excluded based on the intentional acts exclusion contained in its policy. Again, Aetna was informed that plaintiff would seek to recover any excess verdict rendered against its insured based on Aetna's bad faith denial of the claim. Plaintiff's counsel did not receive a response to either letter.

Through discovery directed to former and present employees of Aetna who were involved in the investigation of McLaughlin's claim, plaintiff will be able to establish that Aetna denied coverage solely on the basis of McLaughlin's entering a guilty plea to the crimes of third degree murder and aggravated assault. Aetna did not attempt to determine McLaughlin's mental and emotional condition at the time he committed the acts for which he seeks coverage.

Trial Court Opinion, 12/11/91, at 1–8.

In its motion for summary judgment, Aetna asserted that McLaughlin's conduct fell within the insurance policy exclusion provision barring coverage for bodily injury "expected or intended" by the insured. Aetna submitted McLaughlin's prior negotiated plea to third degree murder as sole support for its position, arguing that the guilty plea conclusively

settled the issue of intent. Furthermore, Aetna maintained that McLaughlin's guilty plea precluded appellant from litigating this intent issue because appellant, as assignee of McLaughlin's rights under the policy, takes these rights subject to all Aetna's defenses against McLaughlin. The trial court granted Aetna's motion for summary judgment and dismissed appellant's garnishment proceeding, holding that McLaughlin's guilty plea was conclusive evidence of his intent. Therefore, McLaughlin's acts fell within the purview of the exclusion provision. Thus, held the trial court, Aetna had no duty to defend McLaughlin nor to indemnify him. Appellant, Phyllis Stidham, brought this timely appeal.

## II. STANDARD OF REVIEW

The scope of appellate review of a grant of summary judgment involves the following principles. First, the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, must demonstrate that there exists no genuine, triable issue of fact. Pa.R.C.P. 1035(b). Second, the record must show that the moving party is entitled to judgment as a matter of law. *Id.* The court must examine the record in the light most favorable to the non-moving party, resolving all doubts against the moving party. *Kerns v. Methodist Hosp.*, 393 Pa.Super. 533, 536–37, 574 A.2d 1068, 1069 (1990); *Knecht v. Citizens & Northern Bank*, 364 Pa.Super. 370, 373–74, 528 A.2d 203, 205 (1987). It is fundamental that the moving party's evidence must clearly exclude any genuine issue of material fact. *Aimco Imports v. Industrial Valley Bank, etc.*, 291 Pa.Super. 233, 435 A.2d 884 (1981). Aetna's submissions do not satisfy this requirement. The record fails to resolve unequivocally the issue of McLaughlin's intent because his guilty plea to third degree murder does not necessarily bring his conduct within the intentional acts exclusion clause in Aetna's policy.

## III. GUILTY PLEA

A person is guilty of criminal homicide if that person intentionally, knowingly, recklessly, or negligently causes the

death of another human being. 18 Pa.C.S.A. § 2501. Murder is defined as follows:

### § 2502. Murder

(a) **Murder of the first degree.**—A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing.

(b) **Murder of the second degree.**—A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony.

(c) **Murder of the third degree.**—All other kinds of murder shall be murder of the third degree. Murder of the third degree is a felony of the first degree.

(d) **Definitions.**—As used in this section the following words and phrases shall have the meaning given to them in this subsection:

\* \* \* \* \* \*

"**Intentional Killing.**" Killing by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing.

18 Pa.C.S.A. § 2502. Differences among murder classifications turn largely on the perpetrator's state of mind. *Commonwealth v. Polimeni*, 474 Pa. 430, 378 A.2d 1189 (1977). In order to prosecute for third degree murder, the Commonwealth is not required to prove a specific intent to kill. *Commonwealth v. Frederick*, 327 Pa.Super. 199, 475 A.2d 754 (1984). Malice is the essential element or gravamen of third degree murder, the distinguishing factor between murder and manslaughter. *Commonwealth v. Smouse*, 406 Pa.Super. 369, 594 A.2d 666 (1991); *Commonwealth v. White*, 366 Pa.Super. 538, 531 A.2d 806 (1987), *appeal denied*, 520 Pa. 605, 553 A.2d 967 (1988).

Legal malice exists where there is particular ill-will, or where there is wickedness of disposition, hardness of heart, wanton conduct, cruelty, recklessness of consequences and a mind regardless of social duty. *Commonwealth v. Austin*, 394 Pa.Super. 146, 153, 575 A.2d 141, 145 (1990). In addition,

malice may be inferred from the use of a deadly weapon upon a vital part of the body. *Commonwealth v. Pigg,* 391 Pa.Super. 418, 428, 571 A.2d 438, 441 (1990), *appeal denied,* 525 Pa. 644, 581 A.2d 571 (1990). The malice necessary to support a murder conviction may also exist where the principal acts in gross deviation from the standard of reasonable care, failing to perceive that such actions might create a substantial and unjustifiable risk of death or serious bodily injury. *In Interest of Smith,* 396 Pa.Super. 624, 637, 579 A.2d 889, 895 (1990).

█ The *Smith* definition of malice applies in this case. McLaughlin consistently stated that he had only fragmentary memories of the shooting event. Specifically, he did not remember getting his gun and re-entering the tavern. Moreover, McLaughlin had no prior contact with the decedent. In fact, McLaughlin suffered from an alcoholic blackout as a result of his extreme intoxication. Thus, his precise degree of conscious awareness was never determined in the criminal proceedings.

Quite simply, Aetna argues that McLaughlin's guilty plea to third-degree murder constitutes an admission to the malice required to support such a conviction. While this contention is true, in general, it is not necessarily conclusive proof of any conscious or knowing action by McLaughlin which would bring his actions within Aetna's policy exclusion. The inquiry cannot end here. The plurality opinion in *Commonwealth, Dept. of Transp. v. Mitchell,* 517 Pa. 203, 212, 535 A.2d 581, 585 (1987) stated that a guilty plea constitutes an admission to all facts averred in the indictment. We, therefore, examine the criminal information detailing the charges brought against McLaughlin in order to determine just what he admitted by virtue of his guilty plea.

McLaughlin was charged with and admitted to acts done "intentionally, knowingly, recklessly *or* negligently" causing the death of Brett C. Stidham. Whether McLaughlin was consciously aware of his acts or their consequences was not decided at the guilty plea hearing.

Aetna argues that the degree of conscious awareness need not be determined since McLaughlin's guilty plea establishes malice. We have already noted that legal malice may be predicated on a failure to perceive the risk an action can take. *In Interest of Smith, supra.* Accordingly, McLaughlin's guilty plea remains ambiguous enough to have no conclusive effect on a subsequent civil action against Aetna.

Aetna relies on several recent decisions of this Court for its conclusion that the commission of third degree murder precludes an insured from obtaining coverage within his homeowner's insurance policy. In *Donegal Mutual Ins. Co. v. Ferrara*, 380 Pa.Super. 588, 552 A.2d 699 (1989), the insured repeatedly kicked a police officer in the groin during the course of her arrest. In the ensuing civil damage action against the insured, the officer was unable to recover damages through the insured's homeowner's policy. In *Germantown Ins. Co. v. Martin*, 407 Pa.Super. 326, 595 A.2d 1172 (1991), the insured killed two persons in a shooting spree, wounded another, then shot and killed himself. These victims were also precluded from recovery under the insured's homeowner's policy. In both cases, however, the insured's intent was conclusively established by evidence independent of any unilateral guilty plea. Accordingly, Aetna's reliance on these cases is misplaced.

"In Pennsylvania, judgments in criminal cases for years were held inadmissible to establish facts in a civil case." *Hurtt v. Stirone*, 416 Pa. 493, 497, 206 A.2d 624, 626 (1965) (citations omitted). The *Hurtt* court stated that decisions recent to that case tended to establish a trend away from such a rigid rule. *Id. See, e.g., Pennsylvania Turnpike Comm. v. United States Fidelity & Guaranty Co.*, 412 Pa. 222, 194 A.2d 423 (1963) (holding that surety was bound by principal's criminal liability when the very issues sought to be litigated had been exhaustively and conclusively litigated in the prior criminal proceedings). With this trend in mind, the *Hurtt* court concluded that proof of an extortion conviction was conclusive evidence of the act of extortion. *Hurtt v. Stirone, supra.* Relying on *Hurtt*, this Court stated in *In re Estate of*

*Reinert,* 367 Pa.Super. 147, 153, 532 A.2d 832, 835 (1987), that a theft conviction is conclusive evidence of the fact that the theft occurred. In both *Hurtt* and *Reinert,* the criminal defendants were seeking to avoid restitution. Consequently, these courts found the felony extortion convictions must bar such avoidance.

■ Evidence of a guilty plea is admissible in a civil action as an admission against interest. *Cromley v. Gardner,* 253 Pa.Super. 467, 385 A.2d 433 (1978). The *Cromley* court concluded that while a guilty plea might be no more than a trial technique whereby the defendant seeks to avoid a lengthy trial, a guilty plea should be admissible where it can "considerably elucidate" the issues. In that case, the guilty plea was clearly indicative of defendant/appellee's guilt of driving under the influence. As such, the court found the plea admissible in the subsequent wrongful death and survival action.

More recently, in *Folino v. Young,* 368 Pa.Super. 220, 533 A.2d 1034 (1987), this Court found that a summary conviction of driving at an unsafe speed was admissible in a subsequent civil action for damages arising out of a collision where the driving conviction formed the basis for the defendant's conviction for vehicular homicide. The Court reasoned that the defendant had had his day in court in his attempt to avoid conviction for homicide by vehicle. Since there was no conflict of evidence regarding the defendant's negligence, such evidence was admissible in the civil action.

■ Having reasoned (1) that criminal convictions are admissible in civil actions arising from the same operative facts and circumstances, (2) that these convictions are conclusive evidence of the criminal acts, and (3) that the criminal convictions can bar recovery under a homeowner's policy where the intent of the insured is independently established, we find that McLaughlin's guilty plea of third-degree murder while severely intoxicated does establish that McLaughlin did shoot and kill Brett Stidham. McLaughlin's guilty plea, however, does nothing to enlighten us regarding his intent to shoot and kill Brett Stidham. While admissible in an underlying civil action,

this guilty plea is hardly conclusive evidence of McLaughlin's intent thereby operating as a bar to recovery under his Aetna homeowner's policy. Because McLaughlin's intent remains a material, factual issue, not excluded by Aetna's evidence, summary judgment in favor of Aetna was inappropriate.

## IV. INTENT

For the purposes of the insurance policy provision excluding coverage for *expected or intended injuries by the insured*, "an insured intends an injury if he desired to cause the consequences of his act or if he acted knowing that such consequences were substantially certain to result." *United Services Auto. Ass'n. v. Elitzky*, 358 Pa.Super. 362, 375, 517 A.2d 982, 989 (1986), *appeal denied*, 515 Pa. 600, 528 A.2d 957 (1987). Moreover, imbibed intoxicants must be considered in determining if the actor has the ability to formulate an intent. *Nationwide Mut. Ins. Co. v. Hassinger*, 325 Pa.Super. 484, 493, 473 A.2d 171, 176 (1984). If the actor does not have the ability to formulate an intent, the resulting act cannot be intentional. *Id.* Finally, intent to become intoxicated does not prove an intent to commit an offense. *Commonwealth v. Pitts*, 486 Pa. 212, 218, 404 A.2d 1305, 1308 (1979) (citations omitted).

After a thorough exegesis of the expected or intended harm clause, this Court, in *Elitzky*, held that the clause is ambiguous as a matter of law and must be construed against the insurer. *Elitzky, supra* 358 Pa.Super. at 375, 517 A.2d at 989. The *Elitzky* court further held that the words "expected" and "intended" are synonymous when interpreting these exclusionary clauses. *Id.* at 380, 517 A.2d at 991. "Both terms connote an element of *conscious awareness* on the part of the insured." *Id.* at 379, 517 A.2d at 991 (emphasis added).

In light of the foregoing discussion and holdings, we find that Phyllis Stidham's complaint does state a cause of action which Aetna may be compelled to cover. Thus, summary

judgment was inappropriately granted to Aetna.[2]

## V. DUTY TO DEFEND

 Where a claim is potentially within the scope of an insurance policy, the insurer who refuses to defend at the outset does so at its own peril. *Cadwallader v. New Amsterdam Casualty Co.*, 396 Pa. 582, 589, 152 A.2d 484, 488 (1959). The underlying complaint fixes the parameters of an insurer's obligation to defend its insured. *Harford Mut. Ins. Co. v. Moorhead*, 396 Pa.Super. 234, 238–39, 578 A.2d 492, 494–95 (1990) (citations omitted); *Elitzky, supra* at 368, 517 A.2d 982 at 985. In the event that the complaint alleges a cause of action which may fall within the coverage of the policy, the insurer is obligated to defend. *Id.* If coverage (indemnification) depends upon the existence or nonexistence of undetermined facts outside the complaint, until the claim is narrowed to one patently outside the policy coverage, the insurer has a duty to defend claims against its insured. *Germantown Insurance Company v. Martin*, 407 Pa.Super. 326, 595 A.2d 1172 (1991); *United Services Auto. Ass'n. v. Elitzky*, 358 Pa.Super. 362, 517 A.2d 982 (1986); *C. Raymond Davis & Sons, Inc. v. Liberty Mutual Ins. Co.*, 467 F.Supp. 17 (E.D.Pa.1979); *Lee v.*

**2.** The *Elitzky* court also resolved the issue, raised by both sides in the instant case, of whether recovery under the homeowner's policy is against public policy.

We adopt the *Hassinger [supra]* court's definition of intent even though that case did not deal with the interpretation of a contractual provision. *Hassinger* dealt only with what type of acts should be excluded from insurance coverage as violative of public policy. However, we feel that an "intended" harm clause should be coterminous with the public policy exclusion. A contrary conclusion would lead to the illogical holding that certain acts are not excluded from coverage under an "intended harm" clause but are nonetheless excluded because of public policy. The law is complex enough without the addition of such highly technical and ultimately pointless distinctions.

*Elitzky, supra* 358 Pa.Super. at 375, 517 A.2d at 989. Accordingly, we need not entertain a separate discussion on the issue of public policy. If McLaughlin's actions fall within the exclusionary clause, it would be against public policy to permit recovery. If his actions do not fall within the exclusionary clause, recovery is permissible and not against public policy.

*Aetna Casualty and Surety Co.,* 81 F.Supp. 1008 (S.D.N.Y. 1949), *aff'd,* 178 F.2d 750 (2nd Cir.1949).

 Aetna relies on the complaint to join the additional defendant McLaughlin as dispositive of its obligation to defend its insured. This complaint alleges that Brett Stidham's injuries were caused by the negligence, carelessness, recklessness, and/or willful conduct of Aetna's insured. This complaint, like the criminal information, is worded broadly enough to create a potentially covered claim. In its letter to McLaughlin dated June 1, 1990, denying coverage and defense, Aetna states that the incident in question would be considered an intentional act. Aetna did not, however, pursue the available declaratory judgment procedure [3] at the outset in order to definitively determine its duty to defend McLaughlin. A declaratory judgment action, though not specifically required by law, might have resolved at the outset the question of Aetna's duty to defend. Until the issue of McLaughlin's intent was resolved, however, Aetna had a duty to provide a defense for its insured. In addition, a declaratory judgment action would have provided a forum for all persons asserting claims on the issue of coverage between the insured and his insurance carrier. The criminal proceedings wherein McLaughlin pled guilty to third degree murder cannot substitute for a declaratory judgment action because all indispensable parties were not involved in that proceeding. *See Vale Chemical Co. v. Hartford Accident and Indemnity Co.,* 512 Pa. 290, 516 A.2d 684 (1986); *Harleysville Mutual Ins. Co. v. Madison,* 415 Pa.Super. 361, 609 A.2d 564 (1992); *Township of Pleasant, Warren Cty. v. Erie Ins. Exchange,* 22 Pa.Cmwlth. 307, 348 A.2d 477 (1975).

## VI. COLLATERAL ESTOPPEL

 Collateral estoppel applies if (1) the issue decided in the prior case is identical to one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to

3. Declaratory Judgment Act, 42 Pa.C.S.A. § 7532.

the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment. *City of Pittsburgh v. Zoning Bd. of Adj.,* 522 Pa. 44, 55, 559 A.2d 896, 901 (1989) (citations omitted). The inquiry must be as to the point or issue actually litigated in the prior action. *Zarnecki v. Shepegi,* 367 Pa.Super. 230, 238, 532 A.2d 873 (1987), *appeal denied,* 518 Pa. 643, 542 A.2d 1371 (1988), *citing Keystone Bldg. Corp. v. Lincoln Sav. & Loan Assoc.,* 468 Pa. 85, 91, 360 A.2d 191, 195 (1976).

We have already discussed that in our jurisdiction, the victim of a criminal act is precluded from litigating the issue of the insured actor's intent where that intent has been established by independent evidence in the prior criminal proceedings. *See Germantown Ins. Co. v. Martin, supra; Commonwealth v. Pigg, supra.* We recognize, however, that the instant case involves McLaughlin's unilateral plea bargain in a criminal proceeding to which Phyllis Stidham was not a party. Moreover, McLaughlin's intent was never fully, fairly and definitively litigated in that criminal proceeding. Nor was the determination of McLaughlin's intent essential to his conviction. Thus, McLaughlin's guilty plea to third degree murder cannot preclude Phyllis Stidham from litigating the issue of intent in a subsequent civil action.

In fact, Phyllis Stidham brought her civil action against the taverns which joined McLaughlin as an additional defendant. Aetna was on notice of this proceeding but, again confident of its legal position, refused both to defend its insured and to participate in the action.

The trial court in that civil action made limited findings as follows:

After consideration of the evidence that's been presented in this case, the Court is prepared to make a limited number of findings of fact and to render a verdict in the case. After consideration of the testimony that's been presented and the facts that were presented through the mouths of counsel by way of stipulation and also the reports, the Court finds that,

as a matter of fact, the defendant, Mr. McLaughlin, in the case, did voluntarily engage in the consumption of a vast amount of alcoholic beverages on the date of the incident. The Court further finds that the defendant at that time was aware of physical effects that he had experienced in the past caused by engaging in the consumption of alcohol. I am referring to the testimony given of his experienced alcohol-induced blackouts in the past. The Court further finds that the defendant was aware that he was in the possession of and under the control of a firearm on the date and at the time when he was drinking. I find that the defendant's engaging in the consumption of the alcohol knowing of these blackouts and also being aware of the proximity of the firearm and ammunition on the date in question constitutes negligence, accordingly; and, furthermore, that the negligence was the legal cause of the harm suffered by the plaintiffs in the case.

Therefore, this 11th day of January, 1991, the Court in its nonjury fashion in the case of Michael Connolly and his wife Lynn Connolly vs. Robert Edward McLaughlin finds in favor of the plaintiffs and against the defendant in the amount of $1,000,000.00.

In the case of Phyllis R. Stidham, as the administratrix of the estate of Brett Chadwick Stidham vs. Robert Edward McLaughlin, the Court finds in a nonjury fashion for the plaintiff and against the defendant in the amount of $1,250,-000.00. That concludes these proceedings.

N.T. 1/11/91, at 3–4.

Aetna argues that it was unnecessary for the court to decide whether the conduct was willful because plaintiff could recover under the lesser standard of negligence. Moreover, because Aetna prevailed on summary judgment in the subsequent garnishment proceedings, Aetna argues that it had no duty to defend, therefore no duty to indemnify. Hence, Aetna argues that it cannot be bound by the finding of negligence.

We are reluctant to discount or diminish the trial court's finding of negligence. Aetna's cavalier approach to the legal proceedings, based on its independent decision not to partici-

pate, was risky. Aetna had the opportunity to litigate the issue of McLaughlin's intent and must, therefore, be bound by the findings that those actions were both negligent and the legal cause of Brett Stidham's death.

Each of the prongs of collateral estoppel is satisfied with regard to McLaughlin's negligence. The issue of intent is identical to the issue of intent in the later garnishment proceedings. Also, there was a final judgment on the merits in the liability action. Aetna was in privity to a party, its insured, and had full opportunity to litigate this intent issue. Finally, the finding of negligence was essential to the judgment of damages. Nothing in the record even suggests that the trial court acted perfunctorily or collusively as to enable Phyllis Stidham to prevail. Thus, all the requirements of collateral estoppel have been met on the issue of negligence. Therefore, in this subsequent garnishment proceeding, Aetna is estopped from contending that McLaughlin acted other than negligently.

## VII. CONCLUSION

The malice necessary for McLaughlin's conviction of third degree murder arose from his failure to perceive that his actions might create a substantial and unjustifiable risk of death or serious bodily injury. Such malice does not, however, conclusively establish his conscious awareness or intent to bring about the resulting harm to Brett Stidham. Thus, McLaughlin's guilty plea to third degree murder, where the criminal proceedings did not establish the extent, if any, of his conscious awareness of his action or the substantial likelihood of the results, cannot conclusively establish a bar to recovery under his homeowner's policy.

Furthermore, because the guilty plea did not elucidate the insured's intent or the extent of the insured's conscious awareness of the substantial certainty of the resulting harm, the subsequent civil claim against the McLaughlin homeowner's policy continued to be viable. Thus, Aetna owed McLaughlin a duty to defend.

Finally, McLaughlin's extreme intoxication as well as the liability action wherein McLaughlin was adjudged negligent, create, at a minimum, a genuine issue of material fact regarding his conscious awareness such that Aetna was not entitled to summary judgment as a matter of law. In resolving the issue of collateral estoppel, we find that all the doctrinal requirements have been met regarding the finding of negligence.

We reverse the order granting summary judgment to Aetna and remand for further proceedings consistent with this opinion.