666 A.2d 681

**Mary TAYLOR, Administratrix of the Estate of Mack Taylor, Deceased, and Widow in Her Own Right, Appellant,**

v.

**OWENS–CORNING FIBERGLAS CORP., Pittsburgh Corning Corp., Celotex Corporation, H.K. Porter Company, Inc., Eagle–Picher Industries, Inc., Southern Textile Company, GAF Corporation, Ruberoid Company, Inc., Owens–Illinois, Inc., Keene Corporation, Armstrong World Industries, Inc., Armstrong Cork Company, United States Gypsum Company, Porter Hayden Co., Foster Wheeler Corporation, York–Shipley, Inc., Pars Manufacturing Company, Phelps Packing and Rubber Company, Inc., Hercules Packing Corporation, Anchor Packing Com-**

pany, Axtec Industries, Inc., Acands Corporation, Flexitallic Gasket Company, Flintkote Company, Garlock Industries, Fibreboard Corporation, Uni–Royal, Inc., National Gypsum Company, Chicago Fire Brick Co., Brand Insulations, Inc., Turner & Newall, A.P. Green Refractories Companies, Allied Corporation, Boiler Tube Co. of America, Prudential Supply Corp., J.H. France Refractories, Inc., Riley Stoker Corporation, Harbison Walker Refractories, Drever Furnaces, Selas Corporation of America, Selas Furnaces, Ray Oil Burner Company, Bickley Furnaces, Inc., National Air Oil Burner Company, Superior Boiler Works, Inc., H.B. Smith, Keller/Dorr–Oliver Boiler Company, International Boilers, Cleaver Brooks, a Div. of Aqua–Chem, Inc., Clark Controller Companies, General Electric Company (U.S.A.), Westinghouse Electronic Company, Cutler–Hammer Companies, Westinghouse Airbrake Company, Crane Packing, Sepco Corporation, Hitco, Rowland Company, Sullivan Industries, Inc., New York Airbrake Company, Gatke Corporation, Peltz Company, Appellees.

Jimmy WATKINS and Madeline Watkins, H/W, Appellants,

v.

Owens–Corning Fiberglas Corp., Pittsburgh Corning Corp., Celotex Corporation, H.K. Porter Company, Inc., Eagle–Picher Industries, Inc., Southern Textile Company, GAF Corporation, Ruberoid Company, Inc., Owens–Illinois, Inc., Keene Corporation, Armstrong World Industries, Inc., Armstrong Cork Company, United States Gypsum Company, Porter Hayden Co., Foster Wheeler Corporation, York–Shipley, Inc., Pars Manufacturing Company, Phelps Packing and Rubber Company, Inc., Hercules Packing Corporation, Anchor Packing Company, Harnischfeger Corporation, Acands Corporation, Flexitallic Gasket Company, Flintkote Company, Garlock Industries, Fibreboard Corporation, Uni–Royal, Inc., National Gypsum Company, Peltz Company, Brand Insulations, Inc., Raymark Corporation, Turner & Newall, A.P. Green Refractories, Companies, Allied Corporation, Harvey Hubbell, Inc., Prudential Supply Corp., J.H. France Refractories, Inc., Riley Stoker Corporation, Harbison Walker Refractories, American Hoist and Derrick Company, Drever Furnaces, Selas Corporation of America, Selas Furnaces, Ray Oil Burner Company, Bickley Furnaces, Inc.,

National Air Oil Burner Company, Superior Boiler Works, Inc., H.B. Smith, Keeler/Dorr–Oliver Boiler Company, International Boilers, Cleaver Brooks, Div. of Aqua–Chem, Inc., Westinghouse Airbrake Company, Crane Packing, Sepco Corporation, Hitco, Rowland Company, Sullivan Industries, Inc., New York Airbrake Company, Appellees.

John F. MEEHAN and Kathleen Meehan, H/W, Appellants,

v.

OWENS–CORNING FIBERGLAS CORP., Pittsburgh Corning Corp., Celotex Corporation, H.K. Porter Company, Inc., Eagle–Picher Industries, Inc., Southern Textile Company, Westinghouse Airbrake Company, Crane Packing, Sepco Corporation, Hitco, Rowland Company, Sullivan Industries, Inc., New York Airbrake Company, Appellees.

James YELLOCK and Pauline Yellock, H/W, Appellants,

v.

OWENS–CORNING FIBERGLAS CORP., Pittsburgh Corning Corp., Celotex Corporation, H.K. Porter Company, Inc., Eagle–Picher Industries, Inc., Southern Textile Company, GAF Corporation, Ruberoid Company, Inc., Owens–Illinois, Inc., Keene Corporation, Armstrong World Industries, Inc., Armstrong Cork Company, United States Gypsum Company, Porter Hayden Co., Foster Wheeler Corporation, York–Shipley, Inc., Pars Manufacturing Company, Phelps Packing and Rubber Company, Inc., Hercules Packing Corporation, Anchor Packing Company, Harnischfeger Corporation, Acands Corporation, Flexitallic Gasket Company, Flintkote Company, Garlock Industries, Fibreboard Corporation, Uni–Royal, Inc., National Gypsum, Peltz Company, Brand Insulations, Inc., Raymark Corporation, Turner–Newall, A.P. Green Refractories, Companies, Allied Corporation, Harvey Hubbell, Inc., Prudential Supply Corp., J.H. France Refractories, Inc., Riley Stoker Corporation, Harbison Walker Refractories, American Hoist and Derrick Company, Drever Furnaces, Selas Corporation of America, Selas Furnaces, Ray Oil Burner Company, Bickley Furnaces, Inc., National Air Oil Burner Company, Superior Boiler Works, Inc., H.B. Smith, Keeler/Dorr–Oliver Boiler Company, International Boilers, Cleaver Brooks, Div.

of Aqua–Chem, Inc., Westinghouse Airbrake Company, Crane Packing, Sepco Corporation, Hitco, Rowland Company, Sullivan Industries, Inc., New York Airbrake Company, Clark Controller Companies, General Electric Company (U.S.A.), Westinghouse Electronic Company, Cutler–Hammer Companies, Appellees.

Robert RIFFERT and Margaret Riffert, H/W, Appellants,

v.

OWENS–CORNING FIBERGLAS CORP., Pittsburgh Corning Corp., Celotex Corporation, H.K. Porter Company, Inc., Eagle–Picher Industries, Inc., Southern Textile Company, GAF Corporation, Ruberoid Company, Inc., Owens–Illinois, Inc., Keene Corporation, Armstrong World Industries, Inc., Armstrong Cork Company, United States Gypsum Company, Porter Hayden Co., Foster Wheeler Corporation, York–Shipley, Inc., Pars Manufacturing Company, Phelps Packing and Rubber Company, Inc., Hercules Packing Corporation, Anchor Packing Company, Harnischfeger Corporation, Acands Corporation, Flexitallic Gasket Company, Flintkote Company, Garlock Industries, Fibreboard Corporation, Uni–Royal, Inc., National Gypsum Company, Peltz Company, Brand Insulations, Inc., Raymark Corporation, Turner & Newall, A.P. Green Refractories, Companies, Riley Stoker Corporation, Harbison Walker Refractories, American Hoist and Derrick Company, Drever Furnaces, Selas Corporation of America, Selas Furnaces, Ray Oil Burner Company, Bickley Furnaces, Inc., National Air Oil Burner Company, Superior Boiler Works, Inc., H.B. Smith, Keeler/Dorr–Oliver Boiler Company, International Boilers, Cleaver Brooks, Div. of Aqua–Chem, Inc., Westinghouse Airbrake Company, Crane Packing, Sepco Corporation, Hitco, Rowland Company, Sullivan Industries, Inc., New York Airbrake Company, Appellees.

Superior Court of Pennsylvania.

Argued June 8, 1995.

Filed Oct. 11, 1995.

Charles A. Klein, Philadelphia, for appellants.

W. Matthew Reber, Wynnewood, for Owens–Corning Fiberglas Corp., etc., appellees.

Joseph P. Klein, Philadelphia, for Crane Packing, etc., appellees.

Before McEWEN, TAMILIA and KELLY, JJ.

KELLY, Judge:

This consolidated appeal asks us to determine whether the trial court erred in granting appellees', Clark Controller Companies', Owens–Corning Fiberglas' and John Crane's, motions for summary judgment. Pursuant to appellees' summary judgment motions, the trial court either dismissed or deferred the complaints of appellants, Mary Taylor, Jimmy and Made-

line Watkins, husband and wife, John F. and Kathleen Meehan, husband and wife, Robert and Margaret Riffert, husband and wife, and James and Pauline Yellock, husband and wife. We hold that the trial court was correct to dismiss Ms. Taylor's complaint and defer the Watkins', the Meehans', and the Rifferts' complaints. We further hold, however, that the trial court erred in granting summary judgment against the Yellocks pursuant to appellees' oral summary judgment motion on the morning of trial without allowing the Yellocks adequate time to respond to the motion. Thus, we affirm in part and reverse in part.

The relevant facts and procedural history of this case are as follows. Each of the appellants filed complaints seeking to collect damages for personal injuries resulting from asbestos exposure. The complaints named multiple defendants, but appellees were the only remaining defendants at the time of trial. The cases were consolidated and assigned for trial in reverse-bifurcated form before the Honorable Albert F. Sabo.

On January 4, 1994, following the *voir dire,* a jury was selected and the damages phase of the bifurcated trial was scheduled to commence the following day. This trial, however, never commenced because Judge Sabo granted appellees' motions for summary judgment or dismissal on January 5, 1994. In the cases of Ms. Taylor and the Yellocks, the trial judge granted appellees' motions for summary judgment. In the case of the Watkinses, the Rifferts, and the Meehans, however, Judge Sabo deferred the cases rather than dismissing them.[1]

*Appellant Mary Taylor*

Appellant Mary Taylor instituted her action on April 19, 1988 seeking damages for her deceased husband's, Mack

1. Apparently, following this Court's ruling in *Giffear v. Johns–Manville Corp.,* 429 Pa.Super. 327, 632 A.2d 880 (1993), *allocatur granted,* 539 Pa. 651, 651 A.2d 539 (1994), the Philadelphia County Court of Common Pleas has created an inactive docket for cases which failed to meet the *Giffear* requirements. Accordingly, cases in which a plaintiff is asymptomatic yet diagnosed with an asbestos-related disease or pleural thickening are deferred with the right to request reinstatement if the plaintiff develops physical manifestations of asbestosis.

Taylor's, exposure to asbestos while employed at the Budd Company. Decedent was employed at the Budd Company from 1944 to 1976 as a crane and fork lift truck operator. Decedent was allegedly diagnosed with asbestos-related diseases and pulmonary thickening on November 24, 1986. During his lifetime, decedent remained asymptomatic and the record indicates that as of April, 1987, after a pulmonary evaluation, William Fineman, M.D. detected no physical manifestations of asbestosis. Medical reports also established that decedent had a smoking history of approximately twenty-five to forty-five years. Four months later, on August 5, 1987, decedent died due to metastic bladder cancer, which was not related to the pleural thickening. Pursuant to appellees' motion for summary judgment, on January 5, 1994, Judge Sabo dismissed appellant Mary Taylor's complaint.

*Appellants Jimmy and Madeline Watkins*

Appellants Jimmy and Madeline Watkins commenced their action on December 5, 1988, seeking compensation for appellant-husband's occupational exposure to asbestos. Appellant-husband was initially exposed to asbestos in 1954 when he worked as a longshoreman and later in 1960 when he worked for the Budd Company as a pressman until 1980. Appellant-husband was allegedly diagnosed with an asbestos-related disease on August 13, 1987 and in 1993, complained of shortness of breath when ascending two flights of stairs. A medical examination, however, diagnosed appellant-husband with pleural thickening, not asbestosis. The medical exam further revealed that appellant-husband is obese with high blood pressure and heart abnormalities. At the time of trial, appellant-husband exhibited only shortness of breath. On January 5, 1994, appellees moved for a deferral and Judge Sabo granted the motion. In his ruling, Judge Sabo clearly stated that the case was "not being dismissed" but was merely "being deferred pending the outcome of [*Giffear v. Johns–Manville Corp., supra* ]." N.T. 1/5/94 at 34–35.

*Appellants John F. and Kathleen Meehan*

Appellants John and Kathleen Meehan instituted the present action on December 5, 1988, seeking damages for appel-

lant-husband's physical injuries resulting from asbestos exposure. During the course of appellant-husband's employment at the Budd Company from 1965 to 1980, he was exposed to asbestos. Appellants allege that appellant-husband was diagnosed with asbestosis on December 9, 1987. According to Jonathan Gelfand, M.D., however, as of May 6, 1993, appellant-husband suffered only from pleural thickening rather than asbestosis. Appellant-husband currently suffers from shortness of breath. Furthermore, Dr. Gelfand stated in a medical report that appellant-husband suffered head injuries and smoked for several years. But, it is unclear whether the shortness of breath is attributable to the head trauma, smoking, or an asbestos-related disease. On January 5, 1994, appellees moved for a deferral of the case pursuant to *Giffear v. Johns–Manville Corp., supra,* and Judge Sabo granted the motion.

*Appellants Robert and Margaret Riffert*

Appellants Robert and Margaret Riffert commenced their suit on December 5, 1988, in order to recover for appellant-husband's asbestos exposure during the course of his employment. Appellant-husband was initially exposed to asbestos in 1956 when he worked as an assembler for I.T.E. Circuit Breaker and later from 1961 to 1980 when he was employed as a welder at the Budd Company. Appellants' complaint sets forth that appellant-husband was diagnosed with asbestosis on July 31, 1987. The record, however, reflects that appellant-husband has no symptoms of asbestosis, not even shortness of breath and that appellant-husband suffers only from pleural thickening rather than asbestosis. *See* N.T. 1/5/94 at 10. Appellant-husband's only medical problem is an obstruction of his lungs, attributable to his smoking habit which he continued as of January 5, 1994. Based on appellant-husband's lack of physical symptoms, appellees moved for dismissal under *Giffear v. Johns–Manville Corp., supra,* on January 5, 1994. Judge Sabo granted appellees' motion at which point the Judge Sabo reminded the parties that the Pennsylvania Supreme Court's disposition of *Giffear v. Johns–Manville Corp.,*

*supra,* would ultimately determine the outcome of the case. *See* N.T. 1/5/94 at 11.

*Appellants James and Pauline Yellock*

Appellants James and Pauline Yellock instituted the present action on December 5, 1988, seeking compensation for appellant-husband's injuries resulting from asbestos exposure. Appellant-husband was exposed to asbestos from 1942 to 1946 when he served as a seaman in the United States Navy, in 1949 when he worked as a laborer at the Ohio Steel Mill, in 1952 when he worked at General Steel as a fork lift operator, and from 1955 to 1956 when he worked as a foundry worker and welder at the Budd Company. Appellants allege that appellant-husband was diagnosed with asbestosis on August 5, 1987. On January 5, 1994, appellees orally moved for summary judgment at which point appellant requested that the trial court hold the motion under advisement. *See* N.T. 1/5/94 at 56. Judge Sabo granted appellees' motion for summary judgment on the grounds that appellant-husband failed to prove that he was exposed to asbestos.

Following Judge Sabo's disposition of each of the aforementioned cases, on January 31, 1994, Judge Sabo entered an order consolidating appellants' cases for the purpose of appeal. This timely appeal followed.

Appellants raise the following issues for our review:

I. WHETHER THE TRIAL COURT ERRED IN DISMISSING APPELLANTS' CASES WITHOUT PREJUDICE BASED UPON THIS COURT'S DECISION IN *GIFFEAR V. JOHNS MANVILLE CORP.* (AS TO APPELLANTS MARY TAYLOR, ADMINISTRATRIX OF THE ESTATE OF MACK TAYLOR, DECEASED; JIMMY WATKINS AND MADELINE WATKINS, H/W; JOHN F. MEEHAN AND KATHLEEN MEEHAN, H/W; AND ROBERT RIFFERT AND MARGARET RIFFERT, H/W)?

II. WHETHER AS TO APPELLANTS JAMES YELLOCK AND PAULINE YELLOCK, H/W, ONLY,

THE TRIAL COURT COMMITTED AN ERROR OF LAW IN GRANTING SUMMARY JUDGMENT BASED UPON AN ALLEGED LACK OF PRODUCT IDENTIFICATION?

Appellants' Brief at 3.

■ Ms. Taylor, the Watkinses, the Meehans and the Rifferts contend that the trial court erred as a matter of law by granting appellees' motions for summary judgment or dismissal. Each of these appellants premise their argument on their belief that this Court wrongly decided *Giffear v. Johns–Manville Corp., supra,* and therefore, our Supreme Court will reverse the decision. Ms. Taylor and the Meehans further contend that even if *Giffear v. Johns–Manville Corp., supra,* is affirmed by the Supreme Court, their cases do not fall under the standard set forth by that case. In the cases of the Watkinses and the Rifferts, however, the appeal relies solely on the premise that *Giffear v. Johns–Manville Corp., supra,* will be reversed and it is conceded that if that case is affirmed, their cases were correctly dismissed and placed on the inactive list. Furthermore, the Yellocks contend that the trial court erred in granting appellees' motion for summary judgment. The Yellocks assert two arguments in support of this position; first, the trial judge incorrectly allowed appellees' summary judgment motion to be heard because it was untimely and second, the trial judge erred in granting appellees' motion because the motion was devoid of merit.

When reviewing a motion for summary judgment, we must adhere to the following principles.

First, the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, must demonstrate that there exists no genuine, triable issue of fact. Pa.R.C.P. 1035(b). Second, the record must show that the moving party is entitled to judgment as a matter of law. Id. The court must examine the record in the light most favorable to the non-moving party, resolving all doubts against the moving party. *Kerns v. Methodist Hosp.,* 293 Pa.Super. 533, 536–37, 574 A.2d 1068, 1069 (1990); *Knecht v. Citizens & Northern Bank,* 364 Pa.Super. 370, 373–74, 528

A.2d 203, 205 (1987). It is fundamental that the moving party's evidence must clearly exclude any genuine issue of material fact. *Aimco Imports v. Industrial Valley Bank, etc.*, 291 Pa.Super. 233, 435 A.2d 884 (1981).

*Stidham v. Millvale Sportsmen's Club*, 421 Pa.Super. 548, 558, 618 A.2d 945, 950 (1992).

The complexion of asbestos law in this Commonwealth was altered in 1993. *See Giffear v. Johns–Manville Corp., supra* at 327, 632 A.2d at 880. Prior to *Giffear v. Johns–Manville Corp., supra*, a plaintiff suffering from asymptomatic pleural thickening could recover nominal damages for the non-malignant affliction and subsequently could bring a cause of action for any malignancy, such as cancer. *Marinari v. Asbestos Corp.*, 417 Pa.Super. 440, 445, 612 A.2d 1021, 1023 (1992). This ruling is known as the "two disease rule" because a plaintiff could recover twice for his exposure to asbestos. *See Marinari v. Asbestos Corp., supra* at 442, 612 A.2d at 1022; *Busfield v. A.C. & S.*, 434 Pa.Super. 424, 426, 643 A.2d 1095, 1096 (1994). The *Marinari v. Asbestos Corp., supra*, decision effectively precluded a plaintiff with asymptomatic pleural thickening from a speculative recovery based upon the fear or risk of further injury. *See Marinari v. Asbestos Corp., supra* at 451, 612 A.2d at 1026. This decision represented "a sharp break from the previous law, which required plaintiffs in Pennsylvania, once informed of pleural thickening, to act within the applicable statute of limitations period to make a claim for an asymptomatic condition and also for any [future] diseases . . . related to asbestos exposure." *Giffear v. Johns–Manville Corp., supra* at 334 n. 5, 632 A.2d at 884 n. 5. Thus, because the *Marinari v. Asbestos Corp., supra*, Court "found [that] juries must now base their verdicts not upon sheer speculation as to possible future damages, but rather upon only empirical or physically objective evidence of present injury, should [a plaintiff] at some future date develop an asbestos-related malignancy, he is not to be precluded from instituting a second action." *Morrison v. Fibreboard Corp.*, 428 Pa.Super. 114, 117–18, 630 A.2d 436, 437 (1993).

By establishing the two disease rule for recovery and eliminating the bar of the statute of limitations preventing an action for a malignancy which developed after the onset of asbestosis or pleural thickening, the need to anticipate all possible consequences arising out of a single disease approach has been obviated. Just as all "past present and future asbestos-related mental anguish, inconvenience and distress" arising out of asbestosis or pleural thickening injuries may be fairly compensated in the initial asbestosis action, the same factors are relevant in establishing damages for the malignancy at the time it becomes actionable. No recovery may be had merely for the emotion and anguish arising from the possibility of the development of a malignancy.

*Id.* at 118, 630 A.2d at 437–38 (citations omitted).

This Court's holding in *Giffear v. Johns–Manville Corp., supra*, however, overruled *Marinari v. Asbestos Corp., supra* and *Morrison v. Fibreboard Corp., supra*. We specifically set forth that "asymptomatic pleural thickening does not constitute an injury sufficient to bring about a legal cause of action." *Giffear v. Johns–Manville Corp., supra* at 338, 632 A.2d at 886. Moreover, we emphasized that when a plaintiff suffers from "discernible physical symptoms, a functional impairment or disability" resulting from asbestos exposure, the law would "clearly recognize that his injury would entitle him to an award of damages." *Id.* at 341, 632 A.2d at 887. Therefore, if a plaintiff is able to "lead [an] active, normal [life], with no pain or suffering, no loss of an organ function . . .," he does not have a compensable injury. *Id.* at 341, 632 A.2d at 884. Finally, this Court concluded *Giffear v. Johns–Manville Corp., supra*, by emphasizing that a plaintiff diagnosed with an asbestos-related disease must suffer discernible physical symptoms to have a compensable injury. *Id.* at 345, 632 A.2d at 889.

Instantly, Judge Sabo was not in error for deferring the Meehans', Watkins' and Rifferts' cases. Despite the fact that Judge Sabo stated in his opinion that he dismissed these cases based on *Eckenrod v. GAF Corp.*, 375 Pa.Super. 187, 544 A.2d

50 (1980), *allocatur denied,* 520 Pa. 605, 553 A.2d 968 (1988), which requires a plaintiff to identify the specific product which caused plaintiff's injury, it is apparent from the pretrial transcript that Judge Sabo also correctly relied on *Giffear v. Johns–Manville Corp., supra,* to grant appellees' motions. Counsel stated several times that the motions were deferrals under *Giffear v. Johns–Manville Corp., supra. See* N.T. 1/5/94 at 11, 27, 33. Furthermore, Judge Sabo stated that appellants' cases were not being dismissed but were being deferred pending the outcome of *Giffear v. Johns–Manville Corp., supra. See* N.T. 1/5/94 at 34–35.

Moreover, Mr. Meehan, Mr. Watkins, and Mr. Riffert were all diagnosed with an asymptomatic asbestos-related disease and have not suffered any discernible physical symptoms or functional impairment. Appellant-husbands Watkins and Meehan suffer only from shortness of breath and appellant-husband Riffert currently suffers no discernible symptoms upon which recovery can be based.[2] The record indicates that these three appellant-husbands lead active, normal lives and suffer no pain, loss of organ function or other manifestations of asbestosis. Therefore, until these appellants develop symptoms which are functionally impairing, they are precluded from recovering any damages. If, however, these appellants develop a symptomatic asbestos-related disease in the future, they will have a cause of action and will be able to file a lawsuit. Accordingly, Judge Sabo was correct in deferring appellants Watkins', Meehan's and Riffert's cases pending the development of a compensable injury.[3]

**2.** Shortness of breath alone is not a compensable injury under *Giffear v. Johns–Manville Corp., supra,* because it is not a discernible physical symptom, a functional impairment, or a disability. It is common knowledge that breathlessness is also associated with any number of non-asbestos-related ailments including lung cancer, excessive cigarette smoking, heart disease, obesity, asthma, emphysema and allergic reactions. All three appellant-husbands smoked cigarettes at some point in their lives and the record reflects that appellant Watkins is overweight and suffers from heart problems.

**3.** We note that we specifically reject Judge Sabo's application of *Eckenrod v. GAF Corp., supra,* to the facts of this case. Because we may affirm the decision of the trial court for any reason as long as its result is correct, *Hutchison v. Luddy,* 417 Pa.Super. 93, 113 n. 7, 611 A.2d

■ Similarly, Judge Sabo was not in error for dismissing appellant Taylor's case. Because decedent remained asymptomatic throughout his lifetime, decedent did not suffer a compensable injury under *Giffear v. Johns–Manville Corp., supra.* Despite the fact that, in his opinion, Judge Sabo claimed that the dismissal was based on *Eckenrod v. GAF Corp., supra,* as with appellants Watkins, Meehan and Riffert, the transcript reflects that Judge Sabo also predicated his decision on *Giffear v. Johns–Manville Corp., supra. See* N.T. 1/5/94 at 21, 23. Because decedent had died, deferral of Mr. Taylor's claim under *Giffear v. Johns–Manville Corp., supra,* is futile. Mr. Taylor was asymptomatic when he died and will never develop a compensable asbestos-related injury. Hence, Judge Sabo was not in error for dismissing appellant Taylor's case.

The Yellocks, however, raise separate issues which are unrelated to *Giffear v. Johns–Manville Corp., supra.* Appellants Yellock first contend that the trial judge erred in granting appellees' summary judgment motion because the motion was untimely. As a result, these appellants claim that they were unable to respond to the motion. We agree.

■ At the outset, it is necessary to address appellees' contention that appellants Yellock waived the issue of the timeliness of appellees' summary judgment motion. Appellees argue that appellants Yellock did not object to the timeliness of the summary judgment motion and further contend that because the Yellocks did not raise the issue in their statement of matters complained of on appeal, the issue is waived. We disagree.

1280, 1291 n. 7 (1992), *allocatur granted,* 533 Pa. 660, 625 A.2d 1193 (1993), *dismissed,* 538 Pa. 484, 649 A.2d 435 (1994), we conclude that our resolution of the appeals of the Watkinses, the Meehans, and the Rifferts, discussed supra, and the appeal of Ms. Taylor, discussed infra, are based solely upon *Giffear v. Johns–Manville Corp., supra.* Hence, as the Rifferts', Meehans', and Watkins' claims are not yet actionable under *Giffear v. Johns–Manville Corp., supra,* their cases should be placed, if they have not been placed thus far, on the inactive list in the Asbestos Division of the Philadelphia County Court of Common Pleas. These claims may become actionable at some future time.

■ Initially, we note that the Yellocks did object to the granting of the summary motion and therefore this argument is meritless. *See* N.T. 1/5/94 at 65. However, when filing a statement of matters complained of on appeal, the Yellocks must adhere to Pa.R.App.P. 1925(b). Upon the receipt of notice of an appeal, a trial judge "may enter an order directing the appellant to file of record in the lower court and serve on the trial judge a concise statement of the matters complained of on ... appeal...." Pa.R.App.P. 1925(b). Should the appellant fail to follow such an order, the appellant's failure "may be considered by the appellate court as a waiver of all objections to the order, ruling or other matter complained of." Pa.R.App.P. 1925(b). Thus, this Court has ruled that the failure to raise a particular issue in the concise statement of matters complained of on appeal may result in a waiver of that issue. *Gilmore by Gilmore v. Dondero,* 399 Pa.Super. 599, 582 A.2d 1106, 1108 (1990). *See also Commonwealth v. Forest,* 427 Pa.Super. 602, 607, 629 A.2d 1032, 1035 (1993), *allocatur denied,* 536 Pa. 642, 639 A.2d 28 (1994). It is, however, within the appellate court's discretion to review the issue unless the failure to raise the issue in the Pa.R.App.P. 1925(b) statement hinders appellate review. *Gilmore by Gilmore v. Dondero, supra* at 604, 582 A.2d at 1108. The rationale behind this rule is that when an appellant fails to raise an issue in the Pa.R.App.P. 1925(b) statement, an appellate court may not have the benefit of the rationale of the trial court in support of its decision. *Id.* at 604, 582 A.2d at 1108. In the event that an issue raised in the Pa.R.App.P. 1925(b) statement is analogous to and essentially presents the same legal question as a properly raised challenge, this Court will often review the entire case. *See id.* at 604, 582 A.2d at 1108.

Instantly, despite the fact that the Yellocks did not specifically raise the issue of the timeliness of appellees' summary judgment motion, an analogous issue was raised in their Pa.R.App.P. 1925(b) statement. Appellants raised the following issue: "Did not the trial court err in granting summary judgment by refusing plaintiff permission to obtain an affidavit from plaintiff's product identification co-worker when the defendants had earlier canceled this witness' deposition?" *See*

Supplemental Record at 3. This issue effectively raises the issue of untimeliness and Judge Sabo's refusal to allow appellants time to respond to the summary judgment motion. Judge Sabo failed to respond to this issue in his opinion. Rather, he stated only that "defendant filed a motion for summary judgment" and never addressed the fact that the Yellocks specifically requested a continuance in order to prepare a response. *See* Trial Court Opinion at 3 and N.T. 1/5/94 at 65. Hence, we will employ our discretion and review the Yellocks' issue regarding the timeliness of appellees' summary judgment motion.

 When moving for summary judgment, the moving party must adhere to Pa.R.Civ.P. 1035, the relevant parts of which follow:

(a) After the pleadings are closed, but within such time as not to delay trial, any part may move for summary judgment on the pleadings and any depositions, answers to interrogatories, admissions on file and supporting affidavits.

### Note

See Definition Rule 76 for definition of "affidavit."

In asbestos litigation, a motion for summary judgment *filed* by one defendant alleging a ground common to one or more other defendants is deemed *filed* on behalf of all such defendants. See Rule 1041.1(f).

Pa.R.Civ.P. 1035(a) (emphasis added). It is Pa.R.Civ.P. 1035(a) which applies to the timeliness for filing a summary judgment motion. Unlike the federal rule for summary judgment, Fed.R.C.P. 56(c), which requires that the moving party give ten days' notice to the non-moving party, Pa.R.Civ.P. 1035(a) is silent with respect to notice for the non-moving party. *Moscatiello Const. v. Pittsburgh,* 155 Pa.Cmwlth. 361, 365, 625 A.2d 155, 157 (1993). The lack of an "express notice requirement certainly does not abrogate the right of an opposing party to reasonable notice and a meaningful opportunity to be heard." *Id.* Furthermore, both Pa.R.Civ.P. 1035(a) and the Note to Rule 1035(a) use the term "file" when referring to summary judgment. The term "file" is defined as:

To lay away and arrange in order, pleadings, motions, instruments, and other papers for preservation and reference. To deposit in the custody or among the records of a court. To deliver an instrument or other paper to the proper officer or official for the purpose of being kept on file by him as a matter of record and reference in the proper place. It carries the idea of permanent preservation as a public record.

Black's Law Dictionary, 5th ed. at 566. It may be gleaned from this definition that filing is a formal act of placing a document in the hands of the court. Accordingly, an oral request for summary judgment absent a written document is insufficient to meet the requirements of Pa.R.Civ.P. 1035(a).

Moreover, our Supreme Court has ruled that a motion for judgment on the pleadings raised for the first time on the morning that trial is scheduled to commence is insufficient time to allow the opposing party an opportunity to respond. *Cagnoli v. Bonnell*, 531 Pa. 199, 204, 611 A.2d 1194, 1196 (1992). "Clearly the draftees of Rule 1034 did not envision that a motion for judgment on the pleadings would be submitted, let alone considered, on the very morning that trial is to begin and a jury has been empaneled." *Id.* at 203, 611 A.2d at 1196. The Supreme Court reasoned that an opposing party presented with a motion on the morning that trial is to commence is not afforded a full and fair opportunity to argue against the motion. *Id.* This ruling has been applied to summary judgment motions where the court found that a summary judgment motion may not be granted when it is filed on the morning of trial. *Moscatiello Const. v. Pittsburgh, supra* at 363, 625 A.2d at 156.

Instantly, appellees moved for summary judgment on the morning that trial was to commence and after a jury had been empaneled. Based on *Cagnoli v. Bonnell, supra,* and *Moscatiello Const. v. Pittsburgh, supra,* this is an improper procedure because the Yellocks were denied notice and a reasonable opportunity to respond to the motion. Furthermore, appellees orally moved for summary judgment rather than *filing* the

motion. This certainly does not comport with the Pa.R.Civ.P. 1035(a) requirement that a moving party *file* a motion for summary judgment. The Yellocks repeatedly requested the opportunity to depose witnesses and prepare affidavits in response to appellees' motion. *See* N.T. 1/5/94 at 47, 48, 55, 56, 64–65. As a result of the trial judge's refusal to allow the Yellocks to respond to appellees' motion, the Yellocks were effectively denied notice and an opportunity to argue effectively against the motion. Certainly, it was not the intention of the drafters of Pa.R.Civ.P. 1035 to preclude a non-moving party a full and fair opportunity to respond to a summary judgment motion. Accordingly, we conclude that Judge Sabo erred by granting appellees' motion for summary judgment with regard to the Yellocks.

Based on the foregoing, we affirm the order of the trial court granting appellees' motion for dismissal with regard to Ms. Taylor and affirm the orders of the trial court deferring the cases of the Watkinses, the Meehans and the Rifferts. With respect to the Yellocks, however, we reverse the order of the trial court granting appellees' motion for summary judgment and remand the case for further proceedings consistent with this opinion.

Order affirmed in part and reversed in part. Case remanded. Jurisdiction relinquished.