473 A.2d 171

NATIONWIDE MUTUAL INSURANCE COMPANY

v.

David Lee HASSINGER, Judy D. Harvey, Administratrix of
the Estate of Richard L. Harvey, Deceased; and Judy D.
Harvey, In her own right.

Appeal of Judy D. HARVEY.

NATIONWIDE MUTUAL INSURANCE COMPANY

v.

David Lee HASSINGER, Judy D. Harvey, Administratrix of
the Estate of Richard L. Harvey, Deceased; and Judy D.
Harvey, In her own right.

Appeal of David Lee HASSINGER.

Superior Court of Pennsylvania.

Argued Jan. 25, 1983.

Filed March 2, 1984.

See also, 315 Pa.Superior Ct. 97, 461 A.2d 814.

486

Jack E. Feinberg, Philadelphia, for Harvey, appellant (at No. 350) and appellee (at No. 358).

David E. Lehman, Harrisburg, for Nationwide Mutual Insurance Co., appellant (at No. 358) and appellee (at No. 350).

Before WICKERSHAM, CIRILLO and WATKINS, JJ.

WATKINS, Judge:

This is an appeal from an order of the Court of Common Pleas of Juniata County declaring that since the death of Richard L. Harvey was the result of intentional conduct on the part of the insured, David L. Hassinger, there was no insurance coverage for claims arising out of that death.

In the early morning hours of November 9, 1975, the decedent Richard L. Harvey was struck and killed by a motor vehicle owned and operated by David L. Hassinger. At the time of the incident, the decedent was walking

through a parking lot when Hassinger drove his car over the curb, across the sidewalk, and hit the decedent. The decedent was propelled onto the hood of the car, after which he slipped underneath the car and was run over. As a result, the decedent suffered serious injuries which caused his death.

A civil action was commenced in the Huntingdon County Court of Common Pleas by Mrs. Judy Harvey, widow of the decedent. She sought damages against Hassinger in her capacity as administratrix of her husband's estate and in her own right. As the insurance carrier for the vehicle involved, Nationwide Mutual Insurance Company defended Hassinger subject to a reservation of rights. On March 28, 1979, a verdict was returned in favor of Mrs. Harvey in the amount of $305,000.

Nationwide subsequently petitioned the Court of Common Pleas of Juniata County for a declaratory judgment under its insurance policy with Hassinger claiming that it was not responsible for the liability of Hassinger. It was Nationwide's contention that Hassinger acted intentionally in striking the decedent. Therefore, he was excluded from coverage under a provision in his insurance policy.

Since both Hassinger and Mrs. Harvey had an interest in the declaratory judgment, both were named as Respondents. They contended that, at the time of the incident, Hassinger was so intoxicated as to be incapable of forming an intent to cause his vehicle to strike and kill the decedent. In the absence of any intent, they believed that Nationwide was liable under the policy for the verdict against Hassinger.

The Petition for Declaratory Judgment proceeded to trial before a jury on November 25 and 26, 1980. After hearing the evidence, the jury was asked for its finding with respect to one question: Did Mr. Hassinger act intentionally? The jury answered the interrogatory affirmatively. The court entered a judgment in favor of Nationwide and Hassinger and Harvey brought the instant appeal.

 Appellant's first contention is that the trial judge erred in admitting a photocopy of the insurance policy which had been issued to Hassinger rather than allowing the jury to decide the existence or non-existence of the policy. Appellants submitted that the copy of the policy indicated that the insurance coverage was applicable to a 1966 vehicle, while the vehicle which struck the decedent was a 1965 vehicle. They also contend that appellee did not sufficiently prove delivery of the policy to Hassinger or that Hassinger intended to be bound by the exclusion for intentional acts. The rationale for making these arguments is difficult to comprehend, since appellants are effectively arguing that there was no insurance at all. If the trial court had agreed with appellants' arguments, Nationwide would not have been responsible for Hassinger's liability even if his actions were found to be unintentional. Nonetheless, the trial court properly held that the evidence was sufficient to establish that the copy admitted was a copy of the policy issued to Hassinger and that it provided insurance coverage for the vehicle involved. It is irrelevant whether or not Hassinger intended to be bound by the exclusion for intentional acts, since it is against the public policy of this Commonwealth to provide insurance coverage for intentional acts. *Esmond v. Liscio,* 209 Pa.Superior Ct. 200, 224 A.2d 793 (1966).

Appellants' next contention is that the trial judge erred in allowing the prior testimony of a witness from a criminal hearing to be introduced into evidence.

At a hearing before a District Justice which took place six days after the incident, Russell (Jack) Rowles testified that after striking the decedent, Hassinger got out of his car and said: "I told you I would get the son-of-a-bitch." At the hearing on the Petition for Declaratory Judgment, counsel for Nationwide asked Mr. Rowles whether he could recall of anyone getting out of the car after it struck the decedent. Mr. Rowles replied:

"I really … I won't say. I'm not positive. This is the second time it came up to this, and my first testimony

was fresh and everything, and I really can't say. I'm not sure."

At that time, counsel for Nationwide proposed to introduce the prior testimony of Mr. Rowles. Nationwide argued that the prior testimony was admissible under the doctrine of past recollection recorded.

In order for the contents of a writing to be admissible as post recollection recorded, a foundation must be laid showing that four requirements are met: 1) the witness must have had first hand knowledge of the event; 2) the written statement must be an original memorandum made at or near the time of the event and while the witness had a clear and accurate memory of it; 3) the witness must lack a present recollection of the event; and 4) the witness must vouch for the accuracy of the written memorandum. *Commonwealth v. Cooley*, 484 Pa. 14, 398 A.2d 637 (1979). In addition, it has been held that before a document may be admitted as a recording of a witness' recollection of a past event, the witness himself must have had an opportunity to review the document. If, after reviewing the document, the witness testifies that this memory has not been refreshed, the document may be admitted into evidence. *Commonwealth v. Kendig*, 215 Pa.Superior Ct. 139, 257 A.2d 354 (1969).

The requirement that the person must have had first hand knowledge of the event was clearly met since Mr. Rowles was an eyewitness to the incident. Appellants contend that the second requirement was not fulfilled, arguing that testimony recorded at a preliminary hearing held six days after the event does not constitute a memorandum made "at or near the time of the event." Less than a week had passed between the time of the event and the preliminary hearing. Although Mr. Rowles' testimony was not recorded immediately after the incident occurred, it was recorded at a time near enough to the event that he could have had a clear and accurate memory of it. Mr. Rowles himself testified that the events had been fresh in his mind when he testified at the preliminary hearing. Therefore,

the second requirement for admission of the transcript as past recollection recorded was fulfilled.

The third requirement is that the witness must lack a present recollection of the event. At the hearing on the Petition for Declaratory Judgment, Mr. Rowles was asked questions concerning his testimony at the previous criminal hearing. He stated that he remembered testifying at the preliminary hearing, that the events about which he testified had been fresh in his mind, and that his testimony was true. The following exchange took place between counsel for Nationwide and Mr. Rowles: "Q. And you have no present recollection of whether he got out of his car, is that correct? A. Correct." This unequivocal response to counsel's question, coupled with responses such as, "I'm not positive" and "I'm not sure." established sufficiently that Mr. Rowles had no recollection of the events to which he had previously testified.

In connection with the third requirement, appellants object to the admission of the transcript because Mr. Rowles never had an opportunity to review the document, as required by *Commonwealth v. Kendig*, supra. Counsel for Nationwide had attempted to lay the proper foundation by offering to show a portion of the prior testimony to Mr. Rowles. Appellants objected and the trial court sustained the objection. Since counsel for Nationwide was precluded by the court from showing this testimony to Mr. Rowles, the lack of present recollection had to be proven by alternative means. Taking into consideration the circumstances and the cumulative testimony elicited from Mr. Rowles, we are satisfied that a sufficient foundation was laid establishing that he had no present recollection of the events about which he had previously testified.

The final requirement for the admission of a document as past recollection recorded is that the witness must vouch for the accuracy of the memorandum. Counsel for Nationwide read Mr. Rowles his previous testimony, which was essentially that the man who was driving the car which struck the decedent got out and said: "I told you I would

get the son-of-a-bitch." When asked whether that was a correct record of what he had said at the preliminary hearing, Mr. Rowles replied affirmatively. The fourth requirement was, therefore, fulfilled.

Appellants' next complaint is that the trial judge erred in refusing to instruct the jury to disregard a speech made by Nationwide's counsel after a particular line of questioning by Mrs. Harvey's counsel. Nationwide had subpoened Robert Poche and Susan Wileman, who had been eyewitnesses to the events of November 9, 1975. At the close of the first day of the hearing, Nationwide advised the trial court that they were prepared to release the two witnesses without calling them to testify. Their identity was disclosed to counsel for appellants. The next day, Mrs. Harvey's counsel called Mr. Poche as a witness and began a series of question regarding who had subpoenaed him and Ms. Wileman. Counsel for Nationwide objected and explained that the line of questioning was merely an attempt to raise inferences of impropriety on the part of Nation wide in failing to call them as witnesses. The trial judge agreed. Appellant's counsel then asked the trial judge for an instruction to the jury to disregard the speech made by counsel for Nationwide.

Nationwide's counsel properly objected to the line of questioning and merely explained the grounds for the objection. The obvious inference raised by the questions asked by Mrs. Harvey's counsel is that, if Mr. Poche had been called as a witness for Nationwide, he would have testified adversely to Nationwide's interests. Such an inference is only permitted where the uncalled witness is peculiarly within the reach and knowledge of only one of the parties. It may not arise where the witnesses are equally available to both parties. *Bentivoglio v. Ralston,* 447 Pa. 24, 288 A.2d 745 (1972). The witnesses became equally available to both sides when Nationwide disclosed their identity to appellant's counsel. Therefore, the line of questioning was improper, and Nationwide's objection was properly sustained. The statements made by Nationwide's

counsel in an attempt to explain the reasons for his objection were not so prejudicial as to require an instruction to the jury to disregard the remarks.

■ The final issues raised by appellants relate to the elements of the charge to the jury. Appellants' first contention in this regard is that the trial judge improperly instructed the jury concerning the legal standards for determining intentional conduct. The trial judge instructed the jury, in pertinent part, that intent means:

"The actor desired to cause the consequences of his act, or that he believes that the consequences are substantially certain to result from it... If the actor knows that the consequences are certain, or substantially certain, to result from his act and still goes ahead, he is treated by the law as if he had in fact desired to produce the result... And if you find that the defendant, Mr. Hassinger, did have the intent to harm or kill any individual—not necessarily Mr. Harvey—then that is sufficient to find that that was his intention and that he did act intentionally."

The charge to the jury with regard to intent accurately recites the Restatement (Second) of Torts, Section 8A, which has been cited as authoritative in Pennsylvania. *Commonwealth v. O'Searo,* 466 Pa. 224, 352 A.2d 30 (1976); *Turner Appeal,* 44 Pa.Comm.Ct. 326, 403 A.2d 1346 (1979). Intent may also be transferred from the intended victim to another. Restatement (Second) of Torts, Section 16.

■ Appellants' contention that the trial judge improperly instructed the jury concerning the legal standards for evaluating the effect of intoxicants upon the ability to commit an intentional act is without merit. In his charge to the jury, the trial judge clearly and precisely instructed the jury that the intoxicants imbibed by Hassinger were to be considered in determining if Hassinger had the ability to formulate an intent. It was also emphasized that if one does not have the ability to formulate an intent, the resulting act is not intentional. The charge was a fair statement of the law of Pennsylvania.

Appellant's final contention is that the trial judge erred in charging the jury as to the weight to be given the evidence. The trial judge made reference to the scales of justice and, in one sentence, charged the jury to pile onto the scales all of the witnesses produced by either side. Appellants argue that this implied that the jury should find in favor of whatever side produced the most witnesses. They have picked one sentence out of the charge and now ask for reversal on that basis. However, a reading of the charge as a whole reveals that the trial judge instructed the jury that the credibility rather than the sheer number of witnesses was to be considered by the jury. The trial judge also gave a corrective instruction to that effect. Where the court has distinctly corrected an alleged error so as to leave no doubt as to the law to be applied, there will be no reversal. *Black v. A.E. Troutman*, 385 Pa. 138, 122 A.2d 201 (1956).

Order affirmed.