## State Farm Fire & Casualty Insurance Co.
## v. DeCapua

*C. Leon Sherman* and *Mark Reilly,* for plaintiff.
*Joni M. Mangino,* for defendant.
*Alexander P. Bicket,* for defendant Sharon School District.

FORNELLI, *P.J.,* April 24, 1992—Presently before this court for disposition is the motion for summary judgment of plaintiff State Farm Fire & Casualty Insurance Co. The motion arises in the context of State Farm's filing of a declaratory judgment action wherein State Farm seeks a determination of its obligation to defend and indemnify an individual whom it covered by a policy of homeowner's insurance. Because this court agrees with the plaintiff that no coverage[1] is afforded to the insured on the record presented, the motion for summary judgment will be granted in plaintiff's favor.

---

1. For the purposes of this opinion, the term coverage will include both indemnity and duty to defend obligations of State Farm.

This court's role in determining whether to grant summary judgment is clear. It is the court's task to determine whether there are controverted issues of fact, not whether the evidence is sufficient to prove particular facts. *Troy v. Kampgrounds of America Inc.,* 399 Pa. Super. 41, 581 A.2d 665 (1990). Furthermore, the court must accept as true all well-pleaded facts in the nonmoving party's pleadings, giving them all reasonable inferences drawn therefrom, and determine whether there is an issue to be tried. *Ferguson v. King,* 362 Pa. Super. 543, 524 A.2d 1372 (1987); *Washington Federal Savings and Loan Assn. v. Stein,* 357 Pa. Super. 286, 515 A.2d 980 (1986). With these standards in mind, the following are the facts as presented by the record.

On June 16, 1988, defendants Timothy DeCapua and Martin Noir set fire to the press box at the Sharon High School Football Stadium causing $43,118.14 in damage. In order to recoup this loss, the Sharon School District filed a civil action against DeCapua and Noir at 1299 C.D. 1989, Mercer County Court of Common Pleas (underlying action), alleging their recklessness caused the fire.

After the complaint was filed in the underlying action, State Farm provided counsel to defend DeCapua by virtue of the fact that the household within which he was residing at the time of the fire was covered by a homeowner's insurance policy issued by State Farm. This homeowner's policy provided personal liability coverage for the insured including a legal defense and also indemnity for judgments against the insured in instances where the coverage was applicable.

On July 10, 1991, DeCapua's deposition was taken concerning his involvement in the press box fire in the

underlying action. While under oath, DeCapua explained that on the day in question, he and Noir were at his house and at some point decided to avenge a vendetta against the Sharon High School, apparently resulting from a rivalry between their high school and Sharon. They proceeded to DeCapua's basement and filled between two and four six-inch pony bottles with gasoline from a container for the lawn mower. In the top of the bottles, a rag was placed protruding out as a wick. It was DeCapua's testimony that the bottles would serve as fire bombs to burn the press box.

Upon arriving at the stadium, the two entered the press box and doused the floor with the gasoline from the bottles. The two then threw tissue paper on the floor, "to help the fire," and with two matches, DeCapua lit the fire.

Concerning DeCapua's intentions about the fire, he testified that he intended the press box to catch fire and for it to burn down entirely. He also realized that throwing the bottles or putting gas on the floor of the press box and lighting it would cause it to catch fire.

The policy of homeowner's insurance which was issued by State Farm provides personal liability coverage "if a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage to which this coverage applies, caused by an occurrence." See Policy p. 12. Under the definitional portion of the policy, "an occurrence, as used in section II of the policy, means accident, including exposure to conditions, which result in bodily injury or property damage." See Policy p. 2. Accordingly, State Farm's first argument is that because the fire was not an occurrence, defined by the

policy as an accident, no personal liability coverage is available to DeCapua.

State Farm next argues that even if coverage is initially triggered, liability and coverage for the event in question is excluded pursuant to provisions of the policy denying liability for intentional acts by the insured. The exclusion provides:

"Coverage L and Coverage M do not apply to:

"a. Bodily injury or property damage;

"(1) Which is either expected or intended by an insured; or

"(2) To any person or property which is the result of willful and malicious acts of an insured." See Policy p. 13.

Accordingly, State Farm also argues that because the fire at the Sharon stadium press box was expected or intended, or the result of a willful and malicious act of DeCapua, it is excluded from coverage by the policy.

In opposition thereto, defendant Sharon School District[2] raises the sole argument that DeCapua's admissions do not establish that the fire was intentional. In support of this argument, the school district points to isolated portions of DeCapua's deposition testimony resulting from leading questions wherein he appears to be somewhat ambiguous about his state of mind before and after setting the fire.[3] Based on these statements, it is contended that

2. DeCapua and Noir have neither answered the complaint nor filed responses to this declaratory judgment action by State Farm. Additionally, a default judgment was entered against DeCapua on October 10, 1991, in this action.

3. The portions of DeCapua's deposition in the Sharon School District's brief in opposition to State Farm's motion for summary judgment are as follows:

a genuine issue of material fact exists concerning whether DeCapua possessed the requisite intent in starting the fire to exclude it from coverage under the policy.

After a review of the applicable law, this court agrees with State Farm's second argument, that coverage for

---

*Q.* "Was it your hope that the rain would either put the fire out or not allow the fire to burn at all?"

*A.* "Yes."

*Q.* "It was your hope?"

*A.* "Yes...."

*Q.* "So you hoped that the rain would prevent any damage to the press box when you were having those second thoughts?"

*A.* "Correct."

*Q.* "Is it true to say that on the way down to the press box that you kind of changed your mind about burning the fire—burning the press box down?"

*A.* "Yes, I was having second thoughts; yes."

*Q.* "And that kind of changed your mind?"

*A.* "Uh huh."

*Q.* "Is that yes?"

*A.* "Yes...."

*Q.* "Okay. Did you at any time during the retreat, so to speak, look back and see the fire?"

*A.* "Yes."

*Q.* "How did it look to you?"

*A.* "Very large, engulfed."

*Q.* "What was your reaction?"

*A.* "Well, I was about half-way across the football field and I turned around, and I wasn't expecting it to be as bad as it was. When I saw it, it kind of stunned me and—I don't know—kind of scared me. And then I took off because there was nothing that I could have done."

*Q.* "Was it much bigger than you expected?"

*A.* "Yes."

*Q.* "You weren't certain when you did that, were you, that this type of thing would happen, that would be the consequence?"

*A.* "No."

the fire is excluded under the policy, even assuming that coverage was initially triggered to cover the event in question, and accordingly grants its motion for summary judgment.

Exclusion clauses in insurance policies must be strictly construed, and the burden falls upon the insurer to demonstrate that the event or loss falls within the excluding language. *First Pennsylvania National Bank, N.A., v. National Union Fire Insurance Co. of Pittsburgh, Pa.,* 397 Pa. Super. 612, 580 A.2d 799 (1990); Appleman, *Insurance Law and Practice,* §7401. However, there are situations wherein a court is justified in holding, as a matter of law, that no genuine issue of material fact exists as to the exclusion of a particular loss from coverage. *Niagra Fire Insurance Co. v. Pepicelli, Pepicelli, Watts & Youngs, P.C.,* 821 F.2d 216 (3d Cir. 1987); *State Auto Insurance Assn. v. Kuhfahl,* 364 Pa. Super. 230, 527 A.2d 1039 (1987), *appeal denied,* 517 Pa. 618, 538 A.2d 500 (1988). The case at bar presents such a situation.

Cases analogous to that at bar are consistent in holding that State Farm's liability for DeCapua's acts must be excluded from coverage as being intentional. The leading case of *Elitzky v. United Services Automobile Association,* 358 Pa. Super. 362, 517 A.2d 982 (1986), *appeal denied,* 515 Pa. 600, 528 A.2d 957 (1987), offers guidance into the interpretation of intent in intentional damage exclusion clauses. The court stated:

"Intent means that the 'actor desired to cause the consequences of his act' or that he acted knowing such consequences were 'substantially certain to result....'" *Elitzky,* 358 Pa. Super. 1, 4, 517 A.2d 982, 989, citing

*Nationwide Mutual Insurance Co. v. Hassinger,* 325 Pa. Super. 484, 493, 473 A.2d 171, 175 (1984).

It is also clear that even in situations where resultant damage of the insured's acts is greater in magnitude than specifically intended, the exclusion will still operate to negate coverage. In both *Donegal Mut. Insurance Co. v. Ferrara,* 380 Pa. Super. 588, 552 A.2d 699 (1989), and *State Farm Fire & Casualty Co. v. Levine,* 389 Pa. Super. 1, 566 A.2d 318 (1989), the court rejected the insured's argument that coverage was required because the damage which resulted from the insured's intentional act was much greater than expected.

In *Levine,* the court held that the intended injury need not be of the same magnitude as specifically intended by the insured in order for it to fall within the intended or expected exclusion language. There, the court upheld a jury's determination that the insured intended the injury when he punched the victim in the face despite his protestations that he did not know a single blow could break the victim's facial bones. Citing *Elitzky, supra,* the court held that there is not coverage when the actual injury is of the same general type as the injury intended, 389 Pa. Super. 1, 4, 566 A.2d 318, 320, in accord, *Donegal Mut. Insurance Co. v. Ferrara,* 380 Pa. Super. 588, 594, 552 A.2d 699, 702 (1989), (no coverage was found where the insured kicked the victim's genitals "knowing the consequences of her act would do damage to genitalia").

This court agrees that *Elitzky* and its progeny are controlling presently. Not only is liability properly excluded by the terms of the policies in these cases, but this court further agrees that coverage for the insured's intentional torts and/or criminal acts is violative of the public policy

of Pennsylvania. *Germantown Insurance Co. v. Martin,* 407 Pa. Super. 326, 595 A.2d 1172 (1991); *Nationwide Mutual Insurance Co. v. Hassinger,* 325 Pa. Super. 484, 473 A.2d 171 (1984); *Elitzky, supra.*

Applying the law to the present case, it is clear from the record that the insured intended the property damage in question. It was his uncontroverted, undisputed testimony that he and his accomplice consciously and purposely filled bottles with gasoline at his home, carried these to the stadium and press box, doused the wooden floor with gasoline, used tissue as kindling, and using two matches lit the fire.

This court has carefully examined the testimony of the insured cited by the defendant school district as evidence that the fire was not intentional. However, although the insured expressed "second thoughts" on his way to start the fire, the purposefulness of his actions never strayed from the course of wrongful conduct which was initially undertaken and carried to completion. *Elitzky, supra.* Additionally, the fact that the insured's testimony is somewhat ambiguous as to whether he hoped the rain would put the fire out, and that it was larger than he expected, only emphasize to this court that premeditation, anticipation and aforethought were given to the venture before it was undertaken, and also serve to establish the insured's knowledge that at least *some* fire damage would occur and was intended.

In summary, the motion for summary judgment of plaintiff State Farm is granted based on this court's determination that no genuine issue of material fact exists concerning whether the damage caused by the insured was intended or expected by the insured. This court's

decision however assumes that coverage of the event was triggered by an occurrence as defined by the policy, although there is substantial question as to the validity of that assumption.

Hence this order.

## ORDER

And now, April 24, 1992, upon consideration of the motion for summary judgment of State Farm Insurance Co., it is hereby ordered and decreed that said motion is granted against the defendants.