## Erie Insurance Exchange v. Fry

C.P. of Mercer County, no. 1997-3271.

*Richard W. Kooman II,* for plaintiff.
*Miles K. Karson Jr.,* for defendant Fry.
*R. Charles Thomas,* for defendant Floch.

WHERRY, *J.,* August 20, 1998—In March of 1997, defendant Timothy L. Floch Jr. initiated a civil action against defendant Donald R. Fry in the Court of Common Pleas of Mercer County, Pennsylvania, at civil action no. 992 of 1997, the "underlying lawsuit." At all times relevant to the cause of action in the underlying lawsuit, Fry was insured by plaintiff Erie Insurance Exchange, pursuant to the terms of the Pioneer 21st Century Home Protector insurance policy, no. Q49-3104197. Erie initiated this declaratory judgment action to have this court determine whether Erie has any duty or obligation under the Erie policy to defend and indemnify Fry from any claim arising out of the incident between Floch and Fry that occurred on March 26, 1995, which incident is the subject of the underlying lawsuit. Currently pending before this court is Erie's motion for summary judgment. For the reasons set forth below, this court grants Erie's motion for summary judgment and declares that Erie has no duty or obligation to either defend or indemnify Fry in the underlying lawsuit.

## STANDARD OF REVIEW

A motion for summary judgment is properly granted if, the pleadings, depositions, answers to interrogatories, admissions on file, together with any affidavits, demonstrate that there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Pa.R.C.P. 1035.2. The trial court must examine the record in the light most favorable to the non-moving party and resolve all doubts against the moving party. *Britamco Underwriters Inc. v. Weiner,* 431 Pa. Super. 276, 279, 636 A.2d 649, 650-51 (1994). "Summary judgment may be granted only where the

right is clear and free from doubt." 431 Pa. Super. at 279, 636 A.2d at 650.

## DISCUSSION

The Declaratory Judgments Act, 42 Pa.C.S. §§7531-7541, may be invoked to determine whether an insurer has a duty to defend and indemnify its insured with respect to an underlying lawsuit. *General Accident Insurance Co. of America v. Allen,* 547 Pa. 693, 706, 692 A.2d 1089, 1095 (1997), *on remand to,* 708 A.2d 828 (Pa. Super. 1998). As the Pennsylvania Supreme Court in *Allen* explained:

"A court's first step in a declaratory judgment action concerning insurance coverage is to determine the scope of the policy's coverage. . . . After determining the scope of coverage, the court must examine the complaint in the underlying action to ascertain if it triggers coverage. If the complaint against the insured avers facts that would support a recovery covered by the policy, then coverage is triggered and the insurer has a duty to defend until such time that the claim is confined to a recovery that the policy does not cover. The duty to defend also carries with it a conditional obligation to indemnify in the event the insured is held liable for a claim covered by the policy. . . . Although the duty to defend is separate from and broader than the duty to indemnify, both duties flow from a determination that the complaint triggers coverage." 547 Pa. at 706, 692 A.2d at 1095. (citations omitted)

Section II of the Erie policy, entitled "Home and Family Liability Protection," provides in relevant part:

"We will pay all sums up to the amount shown on the Declarations, which anyone we protect becomes legally obligated to pay as damages because of bodily injury or property damage resulting from an *occurrence*

during the policy period. We will pay for only bodily injury or property damage covered by this policy. . . .

"If anyone we protect is sued for damages because of bodily injury or property damage covered by this policy, we will provide a defense with a lawyer we choose, even if the allegations are not true." (emphasis added)

"Occurrence" is defined in the Erie policy as an "accident, including continuous or repeated exposure to the same general harmful conditions." "Accident," however, is *not* defined in the Erie policy.

"In Pennsylvania, whether bodily injury . . . is caused by an accident must be determined from the perspective of the insured." *State Farm Mutual Automobile Insurance Co. v. Martin,* 442 Pa. Super. 442, 444, 660 A.2d 66, 67 (1995). Although this court has been unable to find a case defining "accident" in the context of a liability insurance policy, this court did find a Pennsylvania Supreme Court case discussing the definition of the phrase "accidental means" in the context of a life insurance policy. In *Urian v. Equitable Life Assurance Society,* 310 Pa. 342, 165 A. 388 (1933), the Pennsylvania Supreme Court stated:

"Our cases have uniformly held that where the cause of injury or death was an act of the insured, the means which caused the result, to be accidental, must be undesigned and unintentional, that accidental injury or death is an unintended and undesigned result arising from acts done, while injury or death by accidental means is a result arising from acts unintentionally done." 310 Pa. at 346, 165 A. at 390 (quoted in *Martin,* 442 Pa. Super. at 444-45, 660 A.2d at 67).

Section II of the Erie policy also excludes coverage to named insureds for bodily injury intentionally inflicted:

"What We Do Not Cover—Exclusions

"Personal Liability Coverage

"Medical Payments To Others Coverage

"We do not cover under *Personal Liability Coverage* and *Medical Payments to Others Coverage:*

"(1) Bodily injury or property damage expected or intended by anyone we protect."

For the purpose of an insurance policy provision excluding coverage for bodily injury "expected or intended by the insured," "[a]n insured intends an injury if he desired to cause the consequences of his act or if he acted knowing that such consequences were substantially certain to result." *United Services Automobile Association v. Elitzky,* 358 Pa. Super. 362, 375, 517 A.2d 982, 989 (1986). After a thorough analysis of "the expected or intended harm" clause, the Superior Court in *Elitzky* held that the clause "is ambiguous as a matter of law and must be construed against the insurer," 358 Pa. Super. at 375, 517 A.2d at 989, and further held that the words "intended" and "expected" are synonymous for the purpose of interpreting these types of exclusionary clauses. 358 Pa. Super. at 377-78, 517A.2d at 990. Both terms connote an element of conscious awareness on the part of the insured. *Id.* at 379, 517 A.2d at 991. If the actor does not have the ability to formulate an intent, the resulting act cannot be intentional. *Nationwide Mutual Insurance Co. v. Hassinger,* 325 Pa. Super. 484, 493, 473 A.2d 171, 176 (1984).

In the amended complaint in the underlying lawsuit, Floch seeks to recover money damages against Fry for injuries and damages allegedly sustained as a result of an assault on Floch by Fry. In paragraph 9 of the

amended complaint, Floch describes the alleged actions of Fry as follows:

"That on March 26, 1995, the defendant, Donald Fry, shouted obscenities at the plaintiff for driving off his driveway into his yard. The defendant, Donald Fry, then reached through the window of the vehicle and grabbed the plaintiff, Timothy L. Floch Jr., by the hair and pounded the plaintiff's head against the window of the vehicle and slammed the plaintiff's head against the car snapping his neck back and forth." See paragraph 9 of the amended complaint in the underlying lawsuit, attached as exhibit A to Erie's motion for summary judgment.

Although the actions alleged in paragraph 9 certainly suggest intentional conduct, other paragraphs of the amended complaint refer to Fry's actions as negligent, reckless, and wanton. See paragraphs 12, 13 and 14 of the amended complaint in the underlying lawsuit, attached as exhibit A to Erie's motion for summary judgment. After the complaint in the underlying lawsuit was filed, Erie undertook a defense on behalf of Fry pursuant to a reservation of rights.

In an attempt to establish that the claim against Fry in the underlying lawsuit falls outside the scope of coverage in the Erie policy, Erie took the deposition of both Floch and Fry in this declaratory judgment action. In his deposition, Floch's description of Fry's alleged actions is consistent with that in the amended complaint:

"When I was getting, you know, pulling up behind him and stopping, he was getting out of his truck, and he come up and reached through the window and called me a fucking idiot and smashed my head up—grabbed me through the window, because the window was down about eight inches to nine inches, and he reached through

and grabbed me by the hair and just started yanking my head, pulling up against the door, and he was, like, How much of an idiot are you backing into my yard? and, I don't know, I don't remember too much after that. I just kind of—I don't know." See deposition of Floch at p. 7, attached as exhibit D to Erie's brief in support of motion for summary judgment.

Fry, on the other hand, contends that he never attacked or assaulted Floch:[1]

"Q. So you're still in your vehicle as you pull down to the road?

"A. Right. And I pulled down to the road and I looked in the mirror, and instead of him backing in the turn-around, he backed around my car and right over into my front yard and got the fender up against the house. Well, at that point I got out of the truck and walked back up the driveway. He had the window down two to three inches, and I said to him, What the hell do you think you're doing in my front yard? I said, There's the turn-around over there. And he didn't answer me, and I said, Look at me, and I shook my finger at him like that (indicating), and I guess I swore at him, and in return, the grandfather, he said, Don't swear at my grandson, and I said, Well, you ain't no

---

1. The fact that Fry denies the allegations in the underlying lawsuit does not give rise to a duty to defend on the part of Erie. Erie's duty is not a duty to defend all claims that its insured contends are groundless, false or fraudulent. Rather, Erie's duty is a duty to defend all claims *covered under the policy,* even if the allegations are not true. See Erie policy, section II at p. 13, attached as exhibit B to Erie's motion for summary judgment. See also, *General Accident Insurance Co. of America v. Allen,* 547 Pa. 693, 702, 692 A.2d 1089, 1093-94 (1997) (an insurer's duty to defend lawsuits even if groundless, false, or fraudulent is limited to lawsuits raising claims covered under the policy), *on remand to,* 708 A.2d 828 (Pa. Super. 1998).

goddamn better than he is if you're that ignorant to back into my front yard. I just had it rolled. He started swinging his arms and—

"Q. Did you reach inside?

"A. No. I was shaking my fist, but my hand never went in, because the window was only down about that much (indicating), and I had a heavy winter coat on and there was no way I could've got my hand inside the truck." See deposition of Fry at p. 20, attached as exhibit E to Erie's brief in support of motion for summary judgment.

Floch's deposition testimony establishes that Fry's alleged actions that form the basis for the underlying lawsuit were neither accidental nor negligent. Furthermore, no facts were established or revealed during the deposition of Floch or Fry to show that Fry did *not* have (1) a conscious awareness of his actions or their consequences, or (2) an ability to formulate an intent.[2] Consequently, this court concludes as a matter of law that the alleged actions of Fry described in Floch's deposition are all intentional actions.[3] There is no alleged

2. For example, if an insured was intoxicated at the time of the commission of the alleged acts, that fact must be considered in determining if the insured had the ability to formulate an intent. *Nationwide Mutual Insurance Co. v. Hassinger,* 325 Pa. Super. 484, 493, 473 A.2d 171, 176 (1984). See also, *Stidham v. Millvale Sportsmen's Club,* 421 Pa. Super. 548, 618 A.2d 945 (1992) (even though the insured shot and killed a person and pled guilty to third-degree murder, the insurer still had a duty to defend the civil case against the insured because (1) the civil complaint against the insured alleged negligent, careless, reckless, and/or willful conduct, *and* (2) evidence established that the insured was intoxicated at the time of the shooting incident).

3. In the amended complaint in the underlying lawsuit, Floch's attorney labeled Fry's actions as negligent, reckless and wanton. See paragraphs 12, 13 and 14 of the amended complaint in the underlying

action of Fry that could possibly be characterized as accidental or negligent. Therefore, there is no coverage under the Erie policy because the underlying lawsuit does not contain a claim for bodily injury resulting from an "occurrence." In addition, the claim contained in the underlying lawsuit is excluded under the Erie policy because the alleged bodily injuries sustained by Floch[4] are the types of injuries intended or expected as a result of the alleged intentional actions of Fry. In other words, Fry's alleged actions are of such a

lawsuit, attached as exhibit A to Erie's motion for summary judgment. Under Pennsylvania law, "[a]n insurer's duty to defend an action against the insured is measured, *in the first instance,* by the allegations in the plaintiff's pleadings . . . ." *Gene's Restaurant Inc. v. Nationwide Insurance Co.,* 519 Pa. 306, 308, 548 A.2d 246 (1988) (emphasis added) (quoting 7C J. Appleman, *Insurance Law and Practice* §4683, at 42 (W. Berdel ed. 1979)). However, now that the parties have engaged in discovery and had the opportunity to fully develop the factual record in support of Floch's claim in the underlying lawsuit, this court is no longer limited to a consideration of the allegations in the amended complaint and the labels placed therein on Fry's actions. Moreover, those labels are nothing more than legal conclusions—which this court, has now determined, based upon the evidence obtained through discovery, to be erroneous legal conclusions.

4. As a result of Fry's alleged assault on Floch, Floch alleges to have sustained serious injuries, including, but not limited to, the following:
(a) Thoracic and cervical strain;
(b) Concussion;
(c) Neck-injury—right arm numbness;
(d) Headaches;
(e) Back pain;
(f) Abrasions;
(g) Emotional distress.
See amended complaint in the underlying lawsuit at paragraph 11, attached as exhibit A to Erie's motion for summary judgment.

nature that an intent to inflict the type of injuries allegedly sustained by Floch can be inferred as a matter of law. Consequently, as a result of the deposition testimony of Floch and Fry, Erie has now confined Floch's claim to a claim (1) not covered under the Erie policy, and/or (2) specifically excluded by the Erie policy.

## CONCLUSION

For the reasons set forth above, this court grants Erie's motion for summary judgment and declares that Erie has no duty or obligation under the Erie policy to defend and indemnify[5] Fry in the underlying lawsuit.

An appropriate order follows.

## ORDER

And now, August 20, 1998, upon consideration of the motion for summary judgment of Erie Insurance Exchange and brief in support, defendant Fry's brief in opposition, the lack of any response from defendant Floch, and the argument of counsel for plaintiff Erie and defendant Fry on Monday, August 3, 1998, it is hereby ordered that:

(1) Erie's motion for summary judgment is granted.

(2) Pursuant to the terms of the Pioneer 21st Century Home Protector insurance policy, no. Q49-3104197, issued by the Erie Insurance Group, Erie has no duty or obligation to defend and indemnify defendant Fry in the underlying lawsuit, *Floch v. Fry,* Mercer County Court of Common Pleas, no. 992 of 1997.

---

5. Because the duty to defend is broader than the duty to indemnify, Erie could not be required to indemnify Fry without also being obligated to defend him.