## Kobsic v. Erie Insurance Co.

*David A. Strassburger* and *Jennifer L. Grossman,* for plaintiffs.

*Peter C. Acker,* for defendant.

ST. JOHN, *J.,* March 13, 2009—Like most married couples, plaintiffs purchased a home and a standard homeowner's insurance policy protecting them from fire and other common hazards. Both plaintiffs were named as people insured by the policy. Unfortunately, involuntary plaintiff (plaintiff Wife) became insane and intentionally set fire to their house and watched it burn from the driveway. She was not prosecuted for this act.

Plaintiff Husband, as an innocent party, sought to recover damages from the couple's homeowner insurance

policy. Defendant denied his request on the basis of several exclusionary clauses in the policy, including one for intentional acts of any insured. Plaintiff Husband is now suing his insurance company for breach of contract and bad faith denial of coverage. Defendant filed preliminary objections in the nature of a demurrer, seeking dismissal of the complaint based upon the exclusions in the policy. The primary issue is whether the homeowner's policy expressly excludes coverage to an innocent insured for the apparent intentional acts of a co-insured who was allegedly incapable of forming intent. Defendant's preliminary objections in the nature of a demurrer will be denied for the reasons set forth below.

On September 3, 2007, plaintiff Wife was home alone. Complaint, 3, 12a. She apparently believed that the house was haunted, "full of conflict," and it was her prison and curse. *Id.* at 12h, 12f, 12a. It is further alleged that she injected herself with a large quantity of insulin and began consuming large amounts of prescription drugs. *Id.* at 12c-12d. Afterwards, she set fire to her house and sat in a lawn chair in the driveway to watch it burn. *Id.* at 12e.

Plaintiff Wife, who has allegedly suffered from severe depression and bipolar disorder for over 20 years, set fire to the house "in the midst of a psychotic episode," and was insane at the time. Complaint 4, 14; 2, 8; 4, 13. After the incident, she was apparently hospitalized in a psychiatric ward for three weeks. *Id.* at 4, 17. After her release, she was transferred to a "personal care home facility," where she remains today. *Id.* at 4, 18.

Plaintiff Husband filed a claim with defendant asserting a total loss of $402,125. Complaint, 2, 10. Defendant

conducted an investigation of the incident, and concluded that plaintiff Wife had acted intentionally to burn the home. *Id.* at 4, 19. Thus, plaintiff was sent a written notice that his claim had been denied, which led plaintiff Husband to file the present suit.

Preliminary objections, the end result of which would be dismissal of a cause of action, should be sustained only in cases that are clear and free from doubt. *Bower v. Bower,* 531 Pa. 54, 57, 611 A.2d 181, 182 (1992). "The test is whether it is clear from all of the facts pleaded that the pleader will be unable to prove facts legally sufficient to establish his or her right to relief." *League of Women Voters of Pa. v. Commonwealth,* 692 A.2d 263, 267 (Pa. Commw. 1997). "In ruling on preliminary objections, all well-pleaded facts in the petition for review and all inferences reasonably deducible therefrom must be accepted as true." *Id.*

Plaintiffs' homeowner's policy includes several exclusionary clauses that defendant argues preclude recovery. *Notably, the policy contains no specific exclusion for acts of insane insureds.* The policy does excludes coverage as follows:

"for loss resulting directly or indirectly from any of the following, even if other events or happenings contributed concurrently, or in sequence, to the loss:

"(8) by neglect of *anyone we protect* to use all reasonable means to protect covered property at and after the time of loss or when property is threatened by a peril covered under *Perils We Insure Against.*

"(9) by intentional loss, meaning any loss arising from an act committed by, or at the direction of, *anyone we*

*protect* with the intent to cause a loss." Complaint, exhibit 1, Erie insurance policy, 10.

Additionally, later in the policy under the heading "Rights and Duties-Conditions" an increase of hazard clause provides that: "[u]nless *we* agree beforehand, coverage is suspended if the hazard is substantially increased by any means within the control or knowledge of *anyone we protect.*" *Id.* at 14.

The policy defines "anyone we protect," as "*you* and the following *residents* of your *household:* (1) residents and wards; (2) other persons in the care of *anyone we protect.*" Complaint exhibit 1, Erie insurance policy, 4. You is defined as "the *subscriber* and others named on the *declarations* under *named insured.*" *Id.* at 5. Both plaintiff Husband and Plaintiff Wife are identified in the policy as named insureds. Complaint exhibit 1, duplicate declarations.

Since both plaintiff Husband and plaintiff Wife are named insureds, the exclusionary clauses in their insurance policy would operate to exclude coverage if either one of them violated one or more of the exclusionary clauses. The mere fact that plaintiff Husband is innocent of any wrongdoing is irrelevant to the consideration of whether he may recover. Rather, this court must honor the language of the policy. Under *McAllister v. Millville Mutual Insurance Company,* 433 Pa. Super. 330, 342, 640 A.2d 1283, 1289 (1994), use of the terms "an" or "any" insured is a clear indication that co-insured obligations are joint and wrongful action by one, prohibits recovery by the other. The present policy uses the term "anyone we protect," which is a similarly clear indication

that an innocent co-insured may not recover after the wrongful actions of the other.

Thus, this court accepts defendant's proposition that the exclusionary clauses in the policy can prohibit an innocent co-insured from the recovery for the wrongful acts of another insured. The question then becomes whether a clearly written exclusion prohibits recovery here at the preliminary objection stage.

Defendant argues that under one or more of the policy exclusions, plaintiff Husband may not recover, since plaintiff Wife acted wrongfully in setting fire to their home, and then doing nothing to prevent the fire from spreading. However, this court must accept the well-pled facts from plaintiffs' complaint as true. Consequently, this court must accept as true that plaintiff Wife was insane at the time she set fire to the home and was therefore not capable of forming intent under the general purview of the law.

The Superior Court held in *Donegal Mutual Insurance Co. v. Baumhammers* that when interpreting the language of an insurance policy: "our goal is to ascertain the intent of the parties as manifested by the language of the written instrument. *Madison Construction Co. v. Harleysville Mutual Insurance Co.,* 557 Pa. 595, 735 A.2d 100 (1999). If the language is not clear, it is construed in favor of the insured, but where the language of the contract is clear and unambiguous, a court is required to give effect to that language. *Id.; Standard Venetian Blind Co. v. American Empire Insurance Co.,* 503 Pa. 300, 469 A.2d 563 (1983). Contractual terms 'are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts.' *Madison Construction*

*Co.,* 557 Pa. at 606, 735 A.2d at 106." 893 A.2d 797, 806 (Pa. Super. 2006).

## I. INTENTIONAL ACT EXCLUSION

There are many Pennsylvania cases dealing with insurance coverage under intentional act exclusions for the acts of allegedly insane individuals, but few deal with the issue of a fire set by an insane co-insured. Plaintiff relies upon the old *full panel* opinion from the Superior Court in *Showalter v. The Mutual Fire Insurance Company of Chester County,* 3 Pa. Super. 448 (1897), which still appears to contain the most in-depth discussion of this issue.[1] *Showalter* involved an insane insured who burned down a barn. The individual's estate and the innocent co-insured sought to recover under their fire insurance policy. The court held that the policy did not contain exclusionary language that prevented recovery by the co-insureds.

The *Showalter* court began its analysis with the general proposition that "[w]hen an insane individual burns his own building, what legal wrong does he commit? Certainly none for which he is punishable criminally, and none for which he is responsible civilly unless it be a breach of duty arising out of contract." *Id.* at 450. An insurance policy "covers all risks of loss or damage . . . save only such as are excepted by the terms of the policy and such as are caused by the voluntary act, assent, procurement or design of the assured himself." *Id.* at 451. The court held that "loss by fire occasioned by the neg-

---

1. The Superior Court originally had only seven judges when it was created in 1895. Pennsylvania Manual 5-5 2007. The *Showalter* panel included all seven judges.

ligent or insane act of the insured is one of the risks assumed, unless expressly excepted." *Id.*

As a matter of public policy, it would have been perfectly acceptable for the insurer to include a clause to exclude coverage for acts performed by one of the insureds, while insane. *Id.* at 450. However, the insurer failed to include such a clause in *Showalter,* and the court concluded that this failure meant the risks of such acts had been assumed by the insurer. *Id.* The court relied upon similar cases from Wisconsin and New York, in concluding that since insurance policies without specific exclusions do not exclude coverage for negligent acts of an insured, a fortiori, they should not exclude coverage for an insane insured "incapable of care." *Id.* at 452, quoting *Karow v. Continental Life Insurance Co.,* 57 Wis. 56 (1883). Finally, the *Showalter* court concluded that:

"Such policy covers all risks of loss from fire not excepted therefrom, nor effected by the intent, design or procurement of the assured. Such being the risk which the defendant here by its contract expressly assumed, it cannot be relieved therefrom merely because the assured burned the property, *if it is made to appear that at the time of such burning the assured was incapable of forming a design or intention to injure.*" *Id.* (emphasis added)

Therefore, *Showalter* reinforced the legal principle that an insurer assumes the risk of destruction for acts of insane individuals, unless the policy includes a specific provision that excludes coverage for those acts. This holding is in keeping with the principle that courts must "ascertain the intent of the parties as manifested by the

language of the written instrument." *Madison Construction Co.,* 735 A.2d at 106. A policy that is silent as to whether coverage was excluded for acts of insane individuals suggests that the parties did not intend to exclude coverage for those acts.

However, there are other insurance cases in Pennsylvania, usually involving shootings, that may conflict with *Showalter,* or at least lead to some confusion about its holding. Most notably, the three-judge panel decisions in *Germantown Insurance Co. v. Martin,* 407 Pa. Super. 326, 595 A.2d 1172 (1991), and *Donegal Mutual Insurance Co. v. Baumhammers,* 893 A.2d 797 (Pa. Super. 2006), seem to achieve a contrary result without even mentioning the *Showalter* full-panel decision.

In *Germantown,* an insured shot several people and himself. The victims and their families sought to recover from the insured's homeowner's insurance policy under the theory that he had acted "accidentally, negligently or inadvertently." *Germantown,* 407 Pa. Super. at 329, 595 A.2d at 1173. The policy however excluded coverage for injuries or loss that is "expected or intended by the insured." *Id.* at 332, 595 A.2d at 1175. The trial court entered a declaratory judgment against the insurer, holding that the insured was insane at the time of the shooting, which meant the insurer had a duty to defend. *Id.* at 330, 595 A.2d at 1174. The trial court applied the "irrational impulse" test and admitted expert psychiatric testimony to determine insanity.

The Superior Court reversed, and held that the trial court had applied the wrong test to determine the insured's intent. First, the court used the definition of intent from the Restatement (Second) of Torts §8A, that "[a]n

insured intends an injury if he desired to cause the consequences of his act or if he acted knowingly that such consequences were substantially certain to result." *Id.* at 332, 595 A.2d at 1175, citing *United Services Automobile Association v. Elitzky,* 358 Pa. Super. 362, 375, 517 A.2d 982, 989 (1986). The court applied that standard and determined that, on the basis of the insured's actions and words, he had acted intentionally. *Germantown,* 407 Pa. Super. at 332-33, 595 A.2d at 1175. The court refused to consider irrelevant psychiatric evidence since it did not address the *M'Naghten* test (which is the appropriate standard to determine mental incapacity in criminal and civil cases), and opined generally that courts should not "[delve] into the subjective state of mind or rationality of the actor" because it sought to avoid disputes between expert witnesses "one of whom can be found to testify on any position." *Id.* at 334, 595 A.2d at 1176.

The *Baumhammers* panel decision relied heavily upon *Germantown* in its holding that Baumhammers had acted intentionally when he shot and killed five people, and was later convicted of five counts of murder in the first degree. It held that "an insured intends an injury if he wanted to cause the consequences of his act or acted knowing that those consequences were substantially certain to result." *Baumhammers,* 893 A.2d at 822. Additionally, "[i]n the absence of facts contradicting what human experience teaches are volitional acts, the shootings indicate that Baumhammers sought to cause the harm that he inflicted and, therefore, acted intentionally. An 'actor is presumed to intend the natural and probable consequences of his actions.'" *Id.* at 823, quoting *Commonwealth v. Sirianni,* 286 Pa. Super. 176, 183 n.7, 428

A.2d 629, 633 n.7 (1981). The critical point for the *Baumhammers* court was the lack of evidence under the *M'Naghten* test to negate the shooter's presumed mental capacity.

Among shooting cases, Pennsylvania courts seem to have only found a genuine issue of material fact with respect to an intentional act exclusion in *Stidham v. Millvale Sportmen's Club,* 421 Pa. Super. 548, 618 A.2d 945 (1992). In *Stidham,* the shooter consumed alcohol and blacked out, such that he had no memory of getting his gun, or shooting anyone. *Id.* at 555, 618 A.2d at 949. He pled guilty to third-degree murder but denied he acted intentionally. The court held that "[i]f the actor does not have the ability to formulate an intent, the resulting act cannot be intentional." *Id.* at 563, 618 A.2d at 953, citing *Nationwide Mutual Insurance Co. v. Hassinger,* 325 Pa. Super. 484, 493, 473 A.2d 171, 176 (1984). Additionally, intent connoted "an element of *conscious awareness* on the part of the insured." *Id.,* citing *Elitzky,* 358 Pa. Super. 362, 379, 517 A.2d 982, 991. Since the evidence in *Stidham* suggested that the shooter might not have had a conscious awareness of his actions, the court held there was a genuine issue of material fact with respect to that issue. *Id.* at 568, 618 A.2d at 954.

When read together, these cases seem to suggest that the Superior Court has abandoned the *Showalter* requirement of including a specific exclusion with respect to acts of insane individuals. Rather, the court has treated an intentional act exclusion as an exclusion of any act, regardless of mental state or defect, so long as the actor falls under the tort definition of objective intent. Addi-

tionally, it appears that only an individual with no conscious control over his actions has been found to fall outside of this interpretation. *Showalter* on the other hand, clearly differentiated between intentional acts, and acts committed by insane individuals. *Showalter* also stands for the proposition that if an insurance company wishes to avoid coverage for acts performed by insane individuals, it must include an exclusion to that effect in its policy. No such exclusion exists here.

Certainly, there is a difference between the insurance policy discussed in *Showalter,* and those in more modern cases because the modern policies include a specific exclusion for intentional acts, whereas the *Showalter* policy contained no intentional act exclusion. Nevertheless, the public policy of preventing an individual from profiting from his own criminal and/or intentional acts, still prevented recovery based upon "voluntary act, assent, procurement or design" of the insured. *Showalter,* 3 Pa. Super. at 451. This public policy exclusion is no less broad than the modern intentional exclusionary clauses. Thus, the mere inclusion of an intentional act exclusion does not differentiate modern cases from *Showalter.* Rather, an intentional act exclusion contained in a modern policy appears to be an effort to express to insureds the long-standing public policy against allowing a person to recover insurance proceeds for his criminal and/or intentional acts. Modern exclusions still generally fail to specify that the acts of an insane individual are excluded from coverage.

It is noteworthy, however, that none of the modern shooting cases properly alleged an insanity defense under *M'Naghten.* Furthermore, the opinions seem to leave an

opening for cases that contain certain facts that contradict "what human experience teaches are volitional acts." *Baumhammers,* 893 A.2d at 823. Insanity is precisely the type of condition (like a blackout) that human experience teaches negates the requisite intent. Thus, to this extent *Showalter* can be viewed in pari materia with the modern cases.

On the other hand, if *Showalter* is inconsistent with modern panel decisions, there is at least a split in the Superior Court decisions. Nonetheless, this court finds the rationale of *Showalter* and *Stidham* to be more in line with human experience and the body of law dealing with mental incapacity due to insanity.[2]

---

2. A recent Third Circuit opinion demonstrates that parties can agree to exclude coverage for acts of insane individuals. *Allstate Insurance Co. v. Lombardi,* 142 Fed.Appx. 549 (3d Cir.) (not selected for publication). This case was a declaratory judgment action brought by the insurer to avoid providing a defense and indemnification to an insured who assaulted another individual during a psychotic episode. The policy excluded coverage for any bodily injury:

"*intended by,* or which may reasonably be expected to result from the *intentional* or criminal acts or omissions of, any insured person. This exclusion applies even if:

"(a) *such insured person lacks the mental capacity to govern his or her conduct. . . .*" *Id.* at 552. (emphasis added)

The federal district court granted summary judgment in favor of the insurer that was affirmed by the Third Circuit Court of Appeals.

Applying Pennsylvania law, the *Lombardi* court followed the Superior Court's holding in *Elitzky* that the "expected or intended" language in exclusionary clauses is capable of several interpretations and is therefore ambiguous. *Id.* The Third Circuit then held that the exclusion in section (a) of the policy for acts of insane insureds does not violate public policy and is enforceable. Therefore, the insurer was relieved of its duty to defend and provide coverage for its insane insured.

Therefore, in the present case, defendant agreed in its insurance policy to cover all risk of loss not specifically excluded. Its intentional act exclusion merely incorporated the common-law rule that a person may not recover for his own intentional acts or those of a co-insured. The exclusion did not include language that would similarly exclude acts by insane individuals. Since this court must accept as true the fact that plaintiff Wife was insane when she set fire to her home, this court cannot conclude that she acted intentionally as set forth in the exclusion. Therefore, this court cannot conclude as a matter of law that plaintiff Husband may be precluded from coverage under the intentional act exclusion, based upon plaintiff Wife's actions while insane. Consequently, defendant's preliminary objection in the nature of a demurrer will be denied as to this exclusion.

## II. NEGLECT EXCLUSION

Defendant also argues that plaintiff Husband cannot recover because plaintiff Wife failed to take remedial steps to notify emergency personnel, or prevent further damage to her home, after she started the fire. Defendant argues that this failure constituted neglect by a co-insured to take reasonable action to prevent a loss, and therefore falls under the neglect exclusion in the policy. Defendant has failed to cite any case law interpreting similar exclusions.

This policy exclusion requires the insured to use all reasonable means to protect the covered property at and after the time of loss or when property is threatened by a peril. Thus, in order to prevail, it must be clear that the facts as pled establish that plaintiff Wife failed to take

remedial action *and* that such action would have prevented or mitigated the loss. Notably, the record does not indicate the extent to which plaintiff Wife poured an accelerant in the house, how quickly therefore the house became engulfed in flames, whether any phones or other devices were available to plaintiff Wife after the initial conflagration began and/or whether remedial actions would have mitigated the loss. Obviously, this court cannot make this determination on the current state of the record.

Even if the record were clear, it is impossible to determine exactly what the clause excludes from coverage. Neglect is not defined in the policy. It is defined in the dictionary as "[t]he omission of proper attention to a person or thing, whether inadvertent, negligent, or willful; the act or condition of disregarding." Black's Law Dictionary 1055 (7th ed. 1999). Reasonable is defined as "[f]air, proper, or moderate under the circumstances." *Id.* at 1272.

Under the Restatement (Second) of Torts §283B, a person's insanity does not relieve him of liability for negligence due to his failure to conform his actions to the standard of a reasonably prudent person. However, this neglect exclusion does not bar coverage for, or relate directly to, negligence. Rather, the policy fails to define neglect. Thus, under the dictionary definition of the term, a person's neglect could be the result of negligence, or could be the result of an inadvertent failure to take remedial action. Therefore, the definition and interpretation of reasonableness used in the context of negligence would appear to be inapposite in this context.

Moreover, this court cannot determine as a matter of law that this policy should be governed by a tort definition of reasonableness. Insurance policies are contracts, and the policies underlying contract and tort law are different. On the one hand, contract law is meant to protect the expectations that have "been bargained for by the parties to the contract. It is necessary to determine whether losses incurred by a party were contemplated ... at the time that the contract was executed." *Hazleton Area School District v. Bosak,* 671 A.2d 277, 283 (Pa. Commw. 1996). On the other hand, tort law is meant to protect "persons and property from losses resulting from injury to that person or property. To recover in negligence, there must be showing of harm above and beyond disappointed expectations." *Id.*

Additionally, the tort policy that insane individuals are responsible for their actions is based upon a policy of deterrence, in that those who care for insane individuals have a better incentive to watch them carefully. See Restatement (Second) of Torts §283B. It is also based upon a consideration that between two parties, an insane individual should be required to pay, rather than the innocent victim. *Id.* On the other hand, contract law is intended to compensate an individual based upon his expectation interest from the terms of the contract. *Hahn v. Atlantic Richfield Co.,* 625 F.2d 1095, 1104 (3d Cir. 1980).

Since the neglect and reasonableness terms are susceptible to multiple interpretations, the neglect exclusion is ambiguous. *Baumhammers,* 893 A.2d at 806. Since it is ambiguous, it must be construed in favor of plaintiffs. *Id.*

In construing the exclusion in favor of plaintiffs, this court cannot conclude that the parties contemplated in their contract of insurance that the reasonableness standard included in the exclusion would operate the same regardless of a person's insanity. The parties failed to specifically define the term or use unambiguous language in the exclusion to allow this court to interpret as a matter of law the standard they meant to apply to insane individuals. Thus, this court cannot conclude as a matter of law that plaintiffs would be unable to prove facts sufficient to establish that the parties did not contemplate that an insane individual would be held to a different standard for reasonableness than a sane individual. Such a different standard could mean that an insured's neglect to take remedial action was actually reasonable, due to his insanity.

The *Showalter* holding is also relevant here. The *Showalter* court did not restrict its holding to intentional act clauses. Rather, it held that the insurer assumed the risk of *any* act by insane individuals unless expressly excluded, which would include neglect. 3 Pa. Super. at 451. There is no language in the policy with respect to neglect by insane individuals, nor is there a definition of neglect that requires that insane individuals be treated identically to sane individuals. Thus, it cannot be determined as a matter of law that defendant did not assume the risk of neglectful acts by insane individuals.

As a result, this court cannot conclude as a matter of law that plaintiffs would be excluded from coverage based upon plaintiff Wife's alleged neglect, and/or whether she could have taken any remedial action that

would have mitigated the loss. Defendant's preliminary objection will therefore be denied as to this exclusion.

## III. INCREASE OF HAZARD SUSPENSION OF COVERAGE CLAUSE

Finally, defendant argues that plaintiffs are precluded from recovery based upon the fact that plaintiff Wife violated the increase of hazard clause. Defendant argues that policy coverage was suspended due to plaintiff Wife's failure to take remedial action, after setting fire to her home. Under defendant's interpretation, the clause would apparently result in suspension of coverage immediately upon the occurrence of the increase in the hazard.

Notably, the increase of hazard clause is not an exclusion of coverage provision. This clause appears as a paragraph in section I of the policy entitled "Rights and Duties—Conditions." Complaint, exhibit 1, Erie insurance policy, 14. In contrast, the exclusions discussed in the previous sections of the opinion appear in the policy four pages earlier under the subheading "What We Do Not Cover—Exclusions." Thus, defendant's argument that the increase of hazard clause is tantamount to a policy exclusion is unfounded according to the policy itself.

Moreover, while Wife's actions and/or inactions may have increased the hazard to her home, it does not appear that coverage would *automatically* be suspended as a result. This policy is a "continuous policy" under its own terms. Complaint, exhibit 1, Erie insurance policy, 23. The policy states that it "will continue in force until cancelled by *us* as explained in the cancellation condi-

tion." *Id.* Thus, by the agreement of the parties, coverage continues until a notice is sent to the plaintiffs. The record here is silent regarding any such notice. Despite the lack of any averment that notice was given, "cancellation or refusal to continue this policy will not take effect until at least 30 days after *we* send it." *Id.* at 22.

As plaintiff points out, under the Unfair Trade Practices Act, 40 Pa.C.S. §1171.5(a)(9), insurance coverage cancellations are not effective until the insured receives written notice of the cancellation on forms approved by the Insurance Commissioner. See *Donegal Mutual Insurance Co. v. Insurance Department,* 719 A.2d 825 (Pa. Commw. 1998). This notice provision specifically applies where "there is a substantial increase in hazards insured against by reason of willful or negligent acts or omissions by the insured. . . ." 40 Pa.C.S. §1171.5(a)(9). Thus, defendant cannot provide for instantaneous cancellation of coverage (under the disguise of a "suspension") upon the occurrence of an increase in hazard. Rather, if defendant sought to cancel coverage for the event, it would first have to send written notice of the cancellation to plaintiffs, which of course cannot be retroactive.

Accordingly, defendant's preliminary objection in the nature of a demurrer will be denied as to this clause as well.

Hence this order:

## ORDER

AND NOW March 13, 2009, defendant's preliminary objections in the nature of a demurrer are denied.